# NEW ENGLAND FIRE AND MARINE INSURANCE COMPANY

*v.*

# GEORGE H. WETMORE *et al.*

1. INSURANCE — PARTIES — *who shall sue — what interest must be in the party suing.* It is a general principle, that in a suit upon a fire policy of insurance, the insured must have an interest in the property at the time of the loss to entitle him to recover.

2. But this is not true in every case, for the insured may have assigned his interest, with the consent of the insurers, and in that event the suit should be brought in the name of the assured, for the benefit of his assignee.

3. It is not understood that an assignee of an insurance policy can maintain a suit thereon in his own name, unless it is so authorized by the act incorporating the insurance company, or by the general law

4. At common law the assignee could not maintain the action in his own name.

5. But, if it were necessary that the party insured should, in such case, have an interest at the time of the loss, the amount of interest, or kind is not material, so that it is a subsisting interest.

6. So, where the insured held certain notes secured by a mortgage upon a house which he procured to be insured, and he afterwards, and before the loss occurred, assigned the notes and mortgage and the policy, with the assent of the insurers, it was considered the ultimate liability of the insured upon his assignment of the notes, and his consequent interest in having the insurance money go to the satisfaction of these notes in the hands of his assignee was a sufficient interest to authorize him to sue in his own name for a recovery of the insurance money.

7. But, on principle, it would seem the fact of the assured having no interest in the insurance at the time of the loss, cannot affect his right to sue and recover for the benefit of his assignee.

8. INSURANCE — *rights of assignee protected.* No act of the party insured, after an assignment of the policy with the assent of the insurers, can impair the rights of the assignee.

9. INSURANCE — RENEWAL RECEIPT, *its nature and effect.* Where the term for which an insurance is effected is about to expire, and a premium is paid for another term, for which a renewal receipt is given, under the conditions contained in the policy, such renewal receipt does not constitute a new agreement of insurance, but merely revives an expiring contract and continues it in force another term. And if a loss occurs within the new term, a recovery must be had upon the original contract, if a recovery is to be had at all.

10. Nor would the rule be different because the premium for the new term was paid by one to whom the policy and the interest insured had been assigned during the original term of insurance, and to whom the renewal receipt was given. For

the parties to the original contract are not thereby changed, nor is there any substitution of parties, and the renewal is only valid and binding, as to rights and obligations, by reference to the policy first issued. A recovery must be had in such case, if at all, in the name of the party originally insured.

11. INSURANCE — *of the application, its office, and effect as a warranty.* The description of the premises sought to be insured in the application, in reference to the uses to which they are then being applied, is not to be regarded as a warranty that they shall not be used, during the existence of the policy, for any other purpose. The application is a mere representation of the assured, and he is not bound to set it out and prove its truth; but if successfully attacked by the defense, if they can show the representation was false, the assured cannot recover on the policy.

12. SAME — *applying property to a prohibited use.* So where a policy of insurance provided, that should the premises insured be applied during the term of the insurance, to any of certain prohibited uses, the policy then and from thenceforth, *so long as the same should be so appropriated, applied or used,* should cease, and be of no force or effect, it was *held,* that the application of the property to a prohibited use, within the term, would not affect the right of the assured to recover in case of a loss, if, *at the time of the loss,* the property was not being so improperly applied or used, and it did not appear that such antecedent misapplication increased the risk, or contributed to the loss.

13. Should, however, the loss occur whilst the property was being appropriated to any prohibited use, then, doubtless, the policy would be avoided.

14. WITNESS — *competency, interest.* The true test of the interest of a witness, consists in the fact that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action.

15. He must have some certain, legal and immediate interest in the result of the cause, or in the record.

16. And this interest must exist at the time when the witness is offered for examination, or when his deposition is taken.

17. So, where a party holding certain promissory notes secured by a mortgage upon a house and lot, obtained an insurance upon the premises, and afterwards assigned the notes and mortgage, and the policy of insurance, and while the interests were thus held by the assignee, the house was destroyed by fire, it was held, in an action in the name of the party originally insured to recover the insurance money, that his assignee holding the interests at the time of the loss, having, in the meantime, assigned the notes and mortgage, and the policy to the insurers, in compliance with one of the conditions of the policy, thereby became divested of his interest in the suit, and was a competent witness therein, on behalf of the party suing.

18. INSURANCE — *interest of the assured — estoppel.* Where the insurers of property have, by their acts and conduct, acknowledged the interest in the premises, of one who paid to them a premium for a renewal of the insurance for another

term, they cannot afterwards allege against his interest in a suit to recover the insurance money for a loss occurring after that time.

19. INSTRUCTIONS — *should be based upon the evidence.* It is proper to refuse an instruction, when there is no evidence on which to base it.

20. INSURANCE OF A MORTGAGE INTEREST — *assignment of the same to the insurers.* By one of the conditions of a policy of insurance issued to a mortgagee, the assured was required, in the event of a loss, to assign to the company the mortgage upon the premises insured, together with the debt secured thereby, or so much thereof as would be sufficient to pay the loss, and a refusal to execute such assignment should operate to discharge the company from all liability under the contract. It is held a sufficient compliance with such condition to assign so much of the mortgage debt as would cover the amount of the insurance; the assured is not required to assign the entire debt, when it exceeds the amount insured.

21. And where the assured, in such case, assigns the debt to the insurers, it is not an unreasonable condition of the assignment that they shall prosecute it at their own costs.

22. INSTRUCTIONS — *if objectionable, will not always cause a reversal.* Although an instruction may be objectionable, a judgment will not be reversed for that cause, when, upon the whole record, it appears that the right is with the party in whose favor the instruction was given, and that justice has been done.

23. WITHDRAWING PLEAS — *whether it may be done as of right.* According to the case of *Ayres* v. *Kelly,* 11 Ill. 17, it was error to refuse to give a defendant leave to withdraw his pleas in a cause; the court, however, are not inclined to follow that decision, but to hold that it is discretionary with the court, to allow it or refuse it.

APPEAL from the Circuit Court of Knox county, the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was an action of assumpsit, instituted in the court below, by George H. Wetmore and Mary A. Wetmore, his wife, and Charles Long, against the New England Fire and Marine Insurance Company, to recover damages occasioned by the destruction by fire, of a house upon which the defendants had issued a policy of insurance.

It appears from the record in the cause, that on the 5th of November, 1856, one William H. Marvel executed his promissory notes to John Biggen, and a mortgage to secure their payment, on lot 3 in block 52, on the west side of Depot street, in Galesburg, in this state, two of which notes and the mortgage were, on the 19th of March, 1859, assigned by Biggen to M. A. Wetmore and Charles Long. M. A. Wetmore, with Long, on

the 25th of March, 1859, effected a policy of insurance with the company, on the premises, for one year, against loss by fire, to the amount of nine hundred dollars, their mortgage interest therein.

In the application for the insurance, the building sought to be insured was described as a dwelling house with some boarders.

The policy of insurance was as follows:

"New England Fire and Marine Insurance Company, of Hartford, Conn., No. 2.    $9.00.    By this policy of insurance the New England Fire and Marine Insurance Company, in consideration of nine dollars to them in hand paid by the assured hereinafter named, the receipt whereof is hereby acknowledged, *do insure* M. A. Wetmore and Charles Long, of Galesburg, Knox county, Illinois, against loss or damage by fire, to the amount of $9.00, for the period of one year, their mortgage interest on a boarding house on the west side of Depot street, in said Galesburg, on lot 3 and block 52, and the said company for the consideration aforesaid, do hereby promise and agree to make good unto the said assured, their executors, administrators and assigns, all such loss or damage not exceeding in amount the sum insured, as shall happen by fire to the property as above specified, from the seventeenth day of March, one thousand eight hundred and fifty-nine (at 12 o'clock noon), until the seventeenth day of March, one thousand eight hundred and sixty (at 12 o'clock at noon), the said loss or damage to be estimated according to the true and actual cash value of the said property at the time the same shall happen, and to be paid within sixty days after due notice and proof thereof, made by the *insured and received at this office in conformity to the conditions annexed to this policy*, provided always, and it is hereby declared, that this company shall not be liable to make good any loss or damage by fire which may happen or take place by means of invasion, insurrection, riot or civil commotion, or of any military or usurped power, or any loss by theft at or after a fire, and provided further, that in case the assured or any other persons or parties, with the knowledge of the assured, shall have existing during the continuance of this policy, any other insurance against loss by fire on the pro-

perty hereby insured, and not consented to by this company in writing, and mentioned in or indorsed upon this policy, or if the assured shall make any attempt to defraud the company, then this insurance shall be void and of no effect, and in case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the insured shall not, in case of loss or damage, be entitled to demand or recover on this policy any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on the said property. And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned premises, shall at any time after the making of, *and during the time this policy would otherwise continue in force, be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra hazardous, or specified in the memorandum of special hazards, in the terms and conditions annexed to this policy, or for the purpose of storing therein any of the articles, goods or merchandise in the same terms and conditions denominated hazardous, extra hazardous, or included in the memorandum of special hazards, except herein specially provided for or hereafter agreed to by this company, in writing, to be added to or indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect.* And it is moreover agreed and declared that this insurance is not intended to apply to or cover any books of account, written securities, deeds or other evidences of title to land, nor to bonds, bills, notes or other evidences of debt, nor to money or bullion. And that this policy is made and accepted in reference to the terms and conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise especially provided for. This insurance (the risk not being changed) may be continued for such further term as shall be agreed on, provided the premium therefor is paid and indorsed on the policy, or receipt given for same. The interest of the insured in this policy is not assignable, unless by consent of this company,

manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect. This policy shall not be valid until countersigned by the authorized agent of said New England Fire and Marine Insurance Company, at Galesburg, Ill. In witness whereof, The New England Fire and Marine Insurance Company caused these presents to be signed by their president and attested by their secretary, in the city of Hartford.

"N. M. WATERMAN, *President.*

"GEO. D. JEWETT, *Secretary.*

"Countersigned at Galesburg, this ⎱
  19th day of March, 1859, ⎰

"J. P. DORMAN, *Agent.*"

There were numerous conditions annexed to the policy, only three of which are necessary to be noticed here, the first, eleventh and fourteenth; they were as follows:

1. Applications for insurance on property must be in writing and must specify the construction and materials of the buildings to be insured, or containing the property to be insured; by whom occupied; whether as a private building or how otherwise; its situation with respect to contiguous buildings, and their construction and materials; and whether any manufactory is carried on within or about it, and, in relation to the insurance of goods and merchandise, whether or not they are of the description denominated *hazardous, extra hazardous or included in the memorandum of special hazards.*

If any person insuring any building, goods or other property in this office shall make any misrepresentation or concealment, or omit to make known any fact or feature in the risk which increases the hazard of the same, or overvalue the same, or if, after insurance is effected, either by the original policy or by the renewal thereof, such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, or if the risk be increased by any means whatever, within the control of the assured, such insurance shall be void and of no effect.

If, during the insurance, the risk be increased by the erection of buildings, or by the use or occupation of neighboring premises, or otherwise, or if for any other cause the company shall so elect, it shall be optional with the company to terminate the insurance, after notice given to the insured or his representative, of their intention to do so, in which case the company will refund a ratable proportion of the premium.

XI. Insurance once made, may be continued for such further time as may be agreed on, the premium required therefor being paid and indorsed on the policy, or a receipt given for the same; and all insurances, original or renewed, shall be considered as made under the original representation, in so far as it may not be varied by a new representation in writing, which, in all cases, it shall be incumbent on the party insured to make, where the risk has been changed, either within itself, or by the surrounding or adjacent buildings; and if, at or before the time of renewing any policy of insurance on property where the risk has been increased by the erection of buildings, or by the use or occupation of the premises insured, or of the neighboring premises, the assured shall fail to give information thereof, said policy and renewal shall be void and of no effect.

XIV. The company will not be answerable for any loss arising from the use of open lights in barns, or where shavings are made, or of fires in buildings unprovided with good and substantial stone or brick chimneys, or in consequence of neglect or deviation from the laws or regulations of police, made to prevent accidents from fire, in places where laws and regulations on this subject exist. In case of loss, the assured shall assign to this company all his right to recover satisfaction therefor from any other person or persons, town or other corporation, with a power of attorney to sue for and recover the same at the expense of this company. And if insured as a mortgagee, he or they shall assign to the company the mortgage upon the premises insured, together with the debt secured thereby, or so much thereof as will be sufficient to pay said loss. And a refusal to execute such assignment shall operate

to discharge this company from all liability under this contract.

Stables are included in the memorandum of special hazards.

On the same day the insurance was effected, George H. Wetmore and his wife assigned and delivered to Long their interest in the notes and mortgage, George H. Wetmore guaranteeing the payment thereof. And on the 31st of the same month, Wetmore and wife, with the assent of the agent of the company, also assigned their interest in the policy to Long. In January or February, 1860, Long, with the assent of the company's agent, assigned the policy to Stewart & Scroggs, and at the same time assigned and delivered to them the notes and mortgage.

It further appears, that on the 19th of March, 1860, the year for which the premises had been insured being about to expire, Stewart & Scroggs paid to the agent of the company a premium on six hundred dollars for one year, to end on the 17th of March, 1861, for which the agent delivered to them a " renewal receipt," as follows :

" New England Fire and Marine Insurance Company, of Hartford, Renewal Receipt No. 5, Galesburg Agency. Received of Stewart & Scroggs seven $\frac{50}{100}$ dollars, being the premium on six hundred dollars, insured under policy No. 2, which is hereby continued in force for one year, to wit, from the 17th day of March, 1860, until the 17th day of March, 1861, at noon.          N. M. WATERMAN, *President.*

".Geo. D. Jewett, *Secretary.*

" Countersigned at Galesburg, this }
    19th day of March, 1860,        }

                " J. P. Dorman, *Agent.*"

This being the relative position of the parties in interest, it appears that on the night between the 9th and 10th of March, 1861, about midnight, the building on the lot, without any fault of the insured, or of Stewart & Scroggs, accidentally took fire and was entirely consumed. The agent of the company was present at the fire, and on the 18th of March, Stewart &

Scroggs gave the agent notice, in writing, of the loss, and on the 29th delivered to him a particular account of the loss, value of the property insured, and by whom owned, duly signed and sworn to, with a certificate of the notary public most contiguous to the place of the fire, as required by the conditions of the policy, all which were satisfactory to the company. At the time of the fire and for some time previous, the house was vacant, but during about six months in the winter of 1860 and 1861, a horse was kept in a small room adjoining the main building, and there was hay and grain in the room, for feed; and during a portion of the time covered by the policy, the main building was used for a saloon in which beer was sold, and in which a bottle of whiskey was seen; there was no occupancy of the building, however, for three or four months previous to the fire.

During the month of March, 1861, the company, through their agent, demanded from Stewart & Scroggs an assignment of the notes and mortgage to them, which was refused; and again in July following. But on the 13th of the latter month, Stewart & Scroggs executed, and offered to deliver to the agent of the company, an assignment of six hundred dollars of the notes and mortgage, with power to collect, which he refused to accept.

On the 23d of the same month, G. C. Lanphere, as the attorney and agent of Stewart & Scroggs, offered to make an assignment to the company of their entire interest in the notes and mortgage, *on condition that they were not to be called upon to pay any of the costs incurred in their collection.*

On the 16th of January, 1862, they executed and delivered to the agent, a full and absolute assignment of the notes and mortgage, and the decree which had, in the mean time, been obtained in a suit to foreclose the mortgage, with all their right therein, which he accepted; and it was disclosed in the evidence that the agent of the company had in his possession an assignment, which was executed in the preceding November.

In the meantime the president and the general agent of the company addressed to their agent and to the attorney of Stewart

and Scroggs, respectively, at Galesburg, the following letters, which are introduced here simply as showing a recognition by the company of the interest of Stewart and Scroggs in the matter of the insurance:

"HARTFORD, CONN., *June 19th*, 1861.
"GEO. C. LANPHERE, ESQ., *Galesburg, Ill.,*

"DEAR SIR—Your favor of 14th inst. is at hand, have directed a Mr. Farmer to look over the S. and S. matter again and report. Having insured S. and S. as mortgagees, we expect when they are paid, they can so manage the title as to place this company (to the extent of its payment) on the same footing as themselves. If Mr. Long has become possessed of a judgment which stands in their way, it is for them to remove such disabilities as they have been requested to do. When they have so done, they will have no cause to complain. But until they show that they can give us a good title we want no investment in their mortgage.                    Truly Yours,
                    N. M. WATERMAN, *President.*"

"CHICAGO, GEN. AGENCY, *July* 17, 1861.
"J. P. DORMAN, ESQ., *Galesburg, Ill.,*

"DEAR SIR—We find it best to avoid litigation, if possible, and therefore wish you to inquire of Messrs. Stewart & Scroggs whether they will assign and transfer to *the New England Fire and Marine Insurance Company of Hartford, Conn.*, the notes and mortgage, and also the decree of sale in Chancery pertaining to the property on which they hold Policy No. 3 in said Insurance Company, on condition of said Insurance Company paying them the sum of $600, their claim thereby, and of giving them a bond to refund to them all over the sum of $600, that may be realized from said notes, mortgage and decree of sale.
                    Very Truly Yours,
                    JEFFERSON FARMER, *Gen. Agent.*"

Before the institution of this suit, the parties had agreed upon and appointed certain arbitrators, who awarded that the cost of replacing the building would be $1,000; but deducting new for

old, $333.33, would make the actual loss by the burning to be $666.67.

The company refused to pay, and this suit was brought to recover the amount of the loss.

The defendants pleaded, *first,* the general issue; *second,* that Stewart and Scroggs were not the assignees of the mortgage at the time of the issuing of the renewal receipt; and *third,* that Stewart and Scroggs did not assign their mortgage interest in the premises to the company, as averred in the declaration. Issues were formed upon these pleas, the defendants having previously asked leave to withdraw them, which was denied, and they excepted. A jury was empanneled, and the facts as before recited, appeared in evidence. During the progress of the trial the plaintiffs called J. C. Scroggs, one of the assignees of the notes and mortgage mentioned, as a witness on their behalf, who, upon being sworn on his *voir dire,* stated: I have no interest at present in the result of this suit; can't say when I parted with my interest; I did once have an interest in this insurance and property insured; assigned my interest to the insurance company; think I assigned my interest to McFarland; can't say when I assigned my interest to him; was equally interested with Stewart; assigned by writing; I think the first suit had then been commenced; I had an interest in the property at the time of the fire, also in notes and mortgage; think I assigned notes and mortgage to McFarland; I had an interest at time of fire, and when proof of loss was made; I never assigned my interest in the policy to any one; never assigned my interest to any one else except the insurance company; we made the proof of loss; don't remember I ever told Farmer I was interested. Defendants objected to witness being sworn in chief and testifying, on account of interest in the result of the suit. The court overruled the objection and let the witness testify, and the defendants excepted.

The evidence being closed, the plaintiffs asked the court to give to the jury the following instruction:

The jury is instructed that the hitching of a horse in the building would not make the building more hazardous, under

the conditions of insurance, unless in addition it was used as a common stable, and thereby brought within the condition of the policy.

The defendants objected, but the court overruled the objection, and gave the instruction, to which the defendants excepted.

The court then gave to the jury, at the request of the defendants, instructions 1 and 2, as follows:

I. If the jury believe, from the evidence, that a part of the building insured as a boarding house, was used and occupied as a stable since the execution of said policy, and before the fire, without the written consent of said defendant, the jury will find for the defendant.

2. If the jury believe, from the evidence, that spirituous liquors were kept in a shop for sale in said insured building, without the consent of the company in writing, after the execution of said policy, and before the fire occurred, they will find for defendant.

The defendant asked the court to give instruction No. 3, as follows:

3. If the jury believe from the evidence, that on the 23d day of July, 1861, the said Stewart & Scroggs, through their attorney, G. C. Lanphere, refused to assign to defendant all their interest, without imposing conditions upon said defendant, in said assignment, then the jury will find for the defendant, unless they believe from the evidence that the defendant afterwards and before the commencement of this suit, accepted an assignment of the mortgage interest in said property. This instruction the court refused to give in the form as asked, but gave it in a modified form, as follows:

If the jury believe from the evidence that on the 23d day of July, 1861, or at any other time after the fire, said Stewart & Scroggs, by themselves, or through their attorney, G. C. Lanphere, refused to assign to defendant, all their interest, without imposing unreasonable conditions upon said defendant, in said assignment to said defendant, then the jury will find for defendant, unless they believe from the evidence that the defendant afterwards, and before the commencement of this suit, accept-

ed an assignment of the mortgage interest in said property. But the fact that Stewart & Scroggs insisted that they were not to be called on to pay any of the court costs in obtaining a decree on the mortgage was not an unreasonable condition within the meaning of the first part of this instruction.

To the giving of said instruction as modified, the defendant objected and excepted, and also excepted to the opinion of the court in refusing to give the instruction as asked.

The court gave instruction No. 4, on behalf of the defendants, as follows:

4. Unless the jury believe, from the evidence or from the admissions made by defendant and read to the jury, that the persons sustaining loss in the said building, on said premises insured, gave notice in writing to said company or their agents as soon after as possible, and delivered as particular an account of their loss or damage, as the nature of the case would admit, signed with their own hands, and accompanying the same with their oath or affirmation, declaring the said account to be just and true, and showing what other, if any, insurance had been made on said property, and what was the whole cash value of the subject insured, and what was their interest therein, and in what general manner as to trade, merchandise, or otherwise, the building insured, and the several parts thereof, were occupied, if occupied at the time of the loss, and who were the occupants of such building, if occupied, and where and how the fire originated, so far as they know or believed; and also produce a certificate, under the hand and seal of a magistrate, notary public or commissioner of deeds, most contiguous to the place of the fire, and not concerned in the loss as a creditor or otherwise, or related to the insured or sufferers, stating that he had examined the circumstances attending the fire, loss or damage alleged, and that he was acquainted with the character and circumstances of the insured or claimants, and that he verily believed that they had, by misfortune, and without fraud or evil practice, sustained loss or damage on the interest insured in said property to the

amount in such certificate stated, which shall have been certified to by said officer, the jury will find for the defendant.

The defendants also asked the following instructions, numbered five, six and eight, which were refused, and exception taken :

5. If the jury believe from the evidence that the mortgage interest in said premises and policy at the time of the fire had been assigned to Stewart & Scroggs, and the assignment of the policy consented to by the insurance company, and that the plaintiffs, Wetmore and Long, had no interest in said mortgage or decree at the time of the fire, the jury will find for defendant.

6. If the jury believe, from the evidence, that the plaintiffs, Long and Wetmore, were the owners of said mortgage interest insured in said premises at the time of the fire, and that upon this trial they have not proven that they made the proofs to the defendant, as stated in instruction No. 4, the jury will find for the defendant.

8. If the jury believe, from the evidence, that the said Stewart & Scroggs refused to make an unconditional assignment of said mortgage interest insured to defendant at any time after the fire, the jury will find for defendant.

The cause being submitted to the jury, they returned a verdict for the plaintiffs, assessing their damages at six hundred and thirty-three dollars.

The defendants thereupon moved for a new trial and in arrest of judgment, which motion was by the court overruled, and a judgment entered upon the verdict of the jury.

From that judgment the defendants took this appeal.

The questions presented upon the record are :

1. Whether the suit for the recovery of the insurance money, was properly brought in the names of the parties originally insured, or whether it should have been brought in the names of the assignees.

2. As to the character and extent of interest required to be in the party seeking such recovery.

New England Fire and Marine Insurance Company *v.* Wetmore et al.

3. As to the nature and effect of a "renewal receipt," given upon the payment of the premium for another term of insurance. And herein, also, as to the right of the assignee of the assured to have an extension of the original policy for another term.

4. Whether the statement in an application for insurance of the uses to which the property sought to be insured is then being applied, is a warranty that it shall not be applied to any other use during the term of insurance; and, herein, of the effect upon the right of recovery, of appropriating the property insured to a prohibited use during a part of the term, though it was not being so misapplied at the time of the loss.

5. As to the competency of Scroggs, one of the holders of the mortgage interest insured, at the time of the loss, as a witness, after he had assigned his interest to the insurers; and,

6. The question is noticed, although not properly arising on the record, whether it is error to refuse to allow a defendant to withdraw his pleas in a cause.

Mr. A. TYLER, for the appellants, relied upon the following points and authorities:

*First.* In reference to the parties to the action. The plaintiffs below, by their assignment of the notes and mortgage, and policy, alienated all their interest in the property insured, and in the insurance money. 23 Ill. 30. And having no interest in the property, policy or renewal receipt *at the time of the fire,* could not recover in this action. Angell on Ins. 258, 259, 260; 22 Ill. 272; 3 Den. 301; 4 Hill, 187; 16 Peters, 503; 3 Fairf. 44; 26 Conn. 165.

The assignees of the notes, mortgage and policy, might have brought the suit in their own names. Angell on Ins. 259, 260; 3 Metc. [Mass.] 66; 12 Mass. 281; 3 Md. 354; 5 Wend. 200; 8 Cush. 131; 8 Mass. 515.

The Wetmores, having a joint interest in the policy and property at the time of its issuing, having sold all their interest to Long, cannot maintain this action jointly with him. Angell on Ins. 443, § 375; 2 Comst. 210; 3 Denio, 301.

The renewal receipt to Stewart & Scroggs was a new, valid and independent contract with them. If they had an interest in property at the time of the issuing the receipt, they must recover, if at all, in their own names. Angell on Ins. 259, 260; 3 Metc. 66; 8 Mass. 515; 2 Wood & Minot, 472; 5 Wend. 200; 12 Mass. 281.

*Second.* Of the application for insurance, as a warranty of the use to which the property should be applied.

The conditions annexed to the policy, and the application are a part of the policy, and the stipulations in the policy are considered express warranties, and if the risk is changed the policy is void, and it is not material that the fact complained of did not exist at the time of the fire. 2 Comst. 210; 6 Cow. 676; 3 Kent's Com. 373; 1 Wash. Cir. C. R. 419; "Conditions A," Policy No. 1, 11, 12; 7 Wend. 270; 6 id. 494; Angell on Ins. 184, 185; 3 Seld. 530; 2 Hall, 589; 3 Comst. 124.

The insurance of the property as a boarding house, and the renewal to Stewart & Scroggs, without any change, was a warranty that the property should not be used as a stable and saloon, for which the contract of insurance was a higher rate, and which, by the conditions of insurance, was denominated "hazardous," and named in the "memorandum of special hazards." 3 Harr. 480; 6 Wend. 623; 2 Den. 75; 1 Green [N. J.], 110; 3 Hill, 501; 2 Wood & Minot, 472.

Messrs. DOUGLAS & CRAIG and GEORGE C. LANPHERE, for the appellees.

It is insisted that the plaintiffs in this suit had no interest in the subject of insurance, and therefore no recovery can be had in their names.

First, the proposition is not correct in fact, for both notes were indorsed by George H. Wetmore and Mary A. Wetmore, and they had an interest in the insurance as indorsers of the notes, and George H. Wetmore, being a stranger to the notes, by indorsing the same, was liable thereon as guarantor, and

and as such, interested in obtaining satisfaction of the notes with the insurance money.

The policy was assigned by Wetmore to Long, and by Long to Stewart and Scroggs, and with the assent of the defendant, and it is well settled that an action cannot be maintained on an insurance policy, in the name of the assignee, and that it can be maintained in the name of the insured. 3 Hill N. Y. 88; *Compton* v. *Jones*, 4 Cowen, 13; 1 Chitty's Pleadings, 9, 10; *Inness* v. *Dunlap*, 8 Tenn. 595; *Currier* v. *Hodgson*, 3 N. H. 82; *Higgins* v. *Dannell*, 4 N. H. 69; *Skinner* v. *Somers*, 14 Mass. 107; *Mowry* v. *Todd*, 12 Mass. 281; *Crocker* v. *Whiting*, 10 Mass. 316; *Dubois* v. *Doubleday*, 9 Wendell, 317; Chitty on Contracts, 614, note 1, 5 Am. ed.; *Granger* v. *Howard Insurance Co.*

The policy in this case never contemplated an action in the name of the assignee. 3 Hill N. Y. 88.

There is no exception to the rule, at common law, that the action must be brought in the name of the assured, unless there is a provision in the policy, charter or by-laws, authorizing an action in the name of the assignee. The following cases authorize it for some one or more of the reasons stated. In N. Y., under the Code, I think it different. 3 Hill, 88; *Mann* v. *Herkimer Co. M. Ins. Co.*, 4 Hill, 187; *Bodle* v. *Chenango Co. M. Ins. Co.*, 2 Comst. N. Y. 53; *Ketchum* v. *Protection I. Co.*, 1 Allen, N. B. 136; *Conover* v. *M. Ins. Co.*, 3 Denio, 254; 1 Comst. N. Y. 290; *Folsom* v. *Belknap Co. M. Ins. Co.*, 10 Foster N. H. 231; *Peabody* v. *Washington Co. M. I. Co.*, 20 Barb. N. Y. 339; 38 N. H. 232.

It is clear that where a policy is assigned, with the assent of the company, the action must be brought in the name of the assured; and it is equally clear that the assured cannot deprive the assignee of his right to the insurance money, by conveying the property and divesting himself of all interest, so that the general proposition that the plaintiff must have an interest in order to allow the action to be prosecuted in his name, is not tenable in all cases. If it were, then the assured, by conveying the property, could defeat a recovery altogether in case of an

assignment. *Bragg* v. *New England M. F. Ins. Co.*, 5 Foster N. H. 289.

Two were insured; one sold his interest in the property to the other; held that the action must be in the name of both. *Tate* v. *Citizens' M. Ins. Co.*, 13 Gray Mass. 79; *Tillow* v. *Kingston M. Ins. Co.*, 1 Seld. N. Y. 405; *Hobbs & Hewly* v. *Memphis Ins. Co.*, 1 Sneed, 444, 22 Ill.; *Dix* v. *Mercantile Ins. Co.*, 272, may be cited against a recovery on the ground of interest; that decision, as applicable to the facts of that case, is upheld by numerous cases. But it does not, on that question, apply to this. There the assignment that divested the interest was in *violation* of a condition of insurance, and avoided the policy. Here the defendants extend and continue the policy, knowing that the original insurers had, before then, parted with all their interest. It does not follow because the insurer cannot sue in his name, that an assignee cannot sue in his name. This is shown in numerous cases. See also *Baltimore Fire Ins. Co.* v. *McGowan*, 16 Maryland, 47.

But it is contended there can be no recovery in this case, because, prior to the fire, a part of the building had been used as a stable for a horse, during the term of the insurance, although at the time of the loss, the house was vacant.

Under the conditions of this policy, such a misapplication of the premises would not avoid the contract. *Lounsbury* v. *Protec. Ins. Co.*, 8 Conn. 459. The case in 3 Seld. 530, cited by the appellants' counsel, is not based upon a sound principle. The description, in the application, of the premises, in reference to the uses to which they were being applied, was a mere representation, which is not a warranty. *Hall* v. *Howard Ins. Co.*, 14 Barb. [N. Y.] 383.

It is not every increase of risk that will avoid the policy. *Joice* v. *Maine Ins. Co.*, 45 Maine, 168.

The hitching of a horse in the building insured was temporary and not habitual, and therefore does not avoid the policy. There is no proof of the storing of any combustible material for any length of time. Dobson & Sotheby, 1 Moody and M. 90, (22 E. C. L., 260) 827; *Moore* v. *Protection Ins. Co.*, 29

Maine, 97; *O'Neil* v. *Buffalo Ins. Co.*, 3 Comst. N. Y. 122; *Hynds* v. *Schenectady Co. M. Ins. Co.*, 16 Barb. N. Y. 119.

Whether the risk had been increased, or whether the building had been so used as to increase the risk, was a question of fact for the jury, and its finding on that point cannot be disturbed. *Tyler* v. *Ætna Ins. Co.*, 12 Wend. 507; *Farmer's I. & L. Co.* v. *Snyder*, 16 Wend. 481; *Grant* v. *Howard Ins. Co.*, 5 Hill, 10; *Percival* v. *Maine M. M. Ins. Co.*, 33 Maine, 242; *Gamwell* v. *Merchant's F. M. Ins. Co.*, 12 Cushing, 167; *Curry* v. *Commonwealth Ins. Co.*, 10 Pick. 525; 29 Maine, 97; 4 Mass. 330.

It is insisted that liquor was found in the building, and that it is prohibited by the conditions, and therefore the policy is void. I cite *Raferty* v. *New Brunswick F. Ins. Co.*, 3 Harrison N. J. 480.

This suit is brought for the benefit of the assignee of a mortgage interest, and the assignment was made with the consent of the defendants.

"If a policy has been assigned to a mortgagee of the mortgaged premises, with the assent of the company, a violation of the conditions, such as would avoid the policy in the hands of the original insured, will not prevent the mortgagee from recovering to the extent of his interest." 7 Barb. 570; see also 2 Gray, 216; 9 Wend. 404; 19 Barb. 442.

"Where a policy has been assigned with the consent of company, it is *no longer in the power* of assignor *to do anything* to impair the validity of the policy in the hands of the assignee. 42 Maine, 221. Assured not responsible for the acts of others.

"Where assured represented in his application that water casks in the insured building were constantly kept full, held that the negligence of assured's servants, in not keeping them full, contrary to assured's orders to have them kept full, would not avoid the policy." 12 Cush. 416, 541; 3 R. I. 102; 8 Gray, 566; 16 Md. 377.

"A negligence of the insured's servants, or agents, does not, in the absence of fraud, prevent recovery on the policy. 31

New England Fire and Marine Insurance Company v. Wetmore et al.

Maine 219; 1 Duer, 371; 16 Barb. 119; 1 Seld. 469; Sumner U. S. C. C. 434; 13 Barb. 234.

Neither does the negligence, or acts, of the tenant affect the right of the landlord to recover. 2 Gray, 221; 6 Gray, 185; *Padelford* v. *Providence M. Ins. Co.*, 3 R. I. 102.

Policy not avoided by the building being unoccupied at time of fire. 45 Maine, 168.

Mr. JUSTICE BREESE delivered the opinion of the Court:

It appears by the record in this case, that one Marvel, on the fifth of November, 1856, executed his notes to one Riggin, and a mortgage to secure their payment on a certain lot in the city of Galesburg, two of which notes and mortgage were, on the 19th of March, 1859, assigned by Riggin to M. A. Wetmore and Charles Long; that George H. Wetmore was the husband of M. A. Wetmore, and, on March 25, 1859, he, with Long, effected a policy of insurance with the appellants on the premises, as "a boarding house," for one year, against loss by fire, to the amount of nine hundred dollars, their mortgage interest therein. On the 31st of March, 1859, the Wetmores, husband and wife, assigned their interest in the policy to Long, with the assent of the company's agent, having previously, on the 25th of March, assigned and delivered to Long their interest in the notes and mortgage, G. H. Wetmore guaranteeing the payment thereof. In January or February, 1860, Long, with the assent of the company's agent, assigned the policy to Stewart and Scroggs, and delivered the same to them. At the same time, Long assigned and delivered to Stewart and Scroggs the notes and mortgage. It further appears, that on the 17th March, 1860, Stewart and Scroggs paid the agent of appellants a premium on six hundred dollars, for one year, to end on the 17th of March, 1861, for which the agent delivered a receipt called "a renewal receipt," executed in the usual manner.

It further appears that on the night between the ninth and tenth of March, 1861, about midnight, the building on the lot, without any fault of the insured, or of Stewart and Scroggs,

was accidentally burnt and entirely consumed. The agent of the appellant was present at the fire, and, on the 18th of March Stewart and Scroggs gave the agent notice, in writing, of the loss, and on the 29th delivered to him a particular account of the loss, value of the property insured, by whom owned, duly signed and sworn to, and a certificate of the notary public most contiguous to the place of the fire, as required by the conditions of the policy, all which were satisfactory to the appellants. At the time of the fire and for some time previous, the house was vacant. On the 15th July thereafter, Stewart and Scroggs executed and offered to deliver to appellants' agent an assignment of six hundred dollars of the notes, and mortgage, and decree, with power to collect, which he refused to accept. On the 16th of January, 1862, they executed and delivered to the agent a full and absolute assignment of the notes, mortgage and decree, with all their right to the same. The arbitrators agreed upon, awarded and determined, before suit was commenced, the amount of loss to be one thousand dollars. The appellants refused to pay, and this action was brought against them, and a judgment recovered for six hundred and thirty-three dollars.

Several objections are made to the recovery in this case; some of which, and the most material, we propose to notice. It is urged by appellants, that the plaintiffs below had no interest in the property insured, in the policy, or in the renewal receipt, at the time of the fire, and therefore cannot recover in this action.

It is a general principle, that, in a fire policy, the insured must have an interest at the time of the loss. The action was brought on the policy by the Wetmores and Long, to whom the policy was executed, and having assigned it with the assent of the insurers, or their authorized agent, the action is properly brought in their name, there being no provision in the policy, or in the charter or by-laws of the company, authorizing an action in the name of the assignee. This seems to be the form in which such actions are usually brought, that is, in the name of the assured. It is not true to the extent contended for, that

31

the assured must, in every case, have an interest in the property at the time of the loss, for he may have assigned his interest, with the consent of the insurers, to another party, for whose use the suit is brought in the name of the assured.. By no act of the assured can his assignee be deprived of his right to the insurance money, which he would be if the assured was bound to show an interest at the time of the loss.

We do not understand that an assignee of an insurance policy can maintain a suit in his own name, unless it is so authorized by the act incorporating the insurance company, or by the general law. At common law, he could not maintain the action in his own name. *Granger* v. *Howard Ins. Co.*, 5 Wend. 202. There are numerous authorities to this point, referred to by appellees' counsel. But had not the plaintiff an interest in the insurance at the time of the loss? The amount of interest or kind is not material, so that it was a subsisting interest. This the plaintiff had, at the time of the loss, as they had indorsed the notes when they assigned their interest in the mortgage, and were responsible on their indorsement, and interested that the insurance money should go to the satisfaction of the notes. To that extent their ultimate liability as assignors of the notes and mortgage was lessened. But on principle, it would seem the fact of the assured having no interest in the insurance at the time of the loss, cannot affect the right of the plaintiffs to sue and recover for the benefit of their assignee. No act of theirs, after an assignment of the policy with the assent of the insurer, can impair the rights of the assignee. *Tillon* v. *The Kingston Mutual Ins. Co.*, 1 Seld., 407.

It is also urged that the renewal receipt executed to Stewart & Scroggs was a new and independent contract with them, and if they had an interest in the property at the time it was executed, they must recover, if at all, in their own names.

What is the nature of a renewal receipt like this? It does not contain on its face, any agreement, it merely revives an expiring contract and continues it in force another year. The parties to the original contract are not changed by it, nor any

substitution of parties, and is only valid and binding, as to rights and obligations, by reference to the policy first issued. That is the only contract of insurance, and a recovery must be had upon that, if a recovery is to be had at all.

In the case of *Henon* v. *The Peoria Marine and Fire Ins. Co.*, 28 Ill. 235, which was an action of covenant on a sealed policy of insurance, which had been renewed by a parol receipt, this court held that, under condition thirteen of the policy, which is identical with condition eleven of this policy, the policy continued itself by its own terms, on the payment of the premium and taking a receipt therefor. This is the mode agreed upon by the parties for continuing the policy, and not by executing a new one. The company has received the premium and given the renewal receipt, the effect of which, as they well understood, was to continue the original policy. These receipts are no new contracts, but merely evidence that the condition of the policy has been complied with by the assured. This disposes of that point.

Another objection made is, that the conditions annexed to the policy, and the application, are a part of the policy, and the stipulations in it are express warranties, and if the risk is changed the policy is void, and it is not material that the fact complained of did not exist at the time of the fire.

This objection is raised on the fact proved, that for some time previous to the fire, but not when the fire happened, a room attached to the main building had been used as a stable for a horse, and the main building for a saloon in which beer had been sold, and in which a bottle of whiskey was seen. In the application for the insurance, the premises are described as a dwelling house with some boarders. Now, it is insisted that this description of the premises was an express warranty that the house and premises should not be used, during the existence of the policy, for any other purpose than a dwelling house or boarding house. We do not so understand the application. In the case cited from 28 Ill., it was held that the application is a mere representation by the assured, and he is not bound to set it out and prove its truth, but if successfully

attacked by the defense, if they can show the representation was false, the assured cannot recover on the policy. What is there, in this contract of insurance, constituting any of the conditions an express warranty? The first condition provides, if after insurance is effected, either by the original policy or by the renewal thereof, such buildings or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, or if the risk be increased by any means whatever, within the control of the assured, such insurance shall be void and of no effect.

Stables are special hazards, for the insuring of which a higher premium is demanded, than for a dwelling or boarding house, but the proof shows that the fire did not occur whilst the small room was so used. The premises had been vacant some months before the fire, and there is no proof going to show that this use of the room increased the risk, or contributed in the remotest degree to the loss. Had the fire occurred whilst it was used as a stable, then doubtless the policy would have been avoided. The meaning of the condition is, if the house or premises shall be appropriated to any prohibited use, then so long as it is so appropriated the policy shall cease to bind the insurers. The New York cases are, we know, all the other way, but we think not with good reason. *Mead* v. *N. W. Ins. Co.*, 3 Seld. 530; *Murdock* v. *Chenango Mutual Ins. Co.*, 2 Comst. 210; *Hanings* v. *Same*, 2 Den. 75. These cases hold that the statements in the application, where that is made part of the policy, of the purpose for which the property insured is to be occupied, if untrue, avoids the policy though a different use be not material to the risk.

But what is the contract in the policy on this point? It is in substance as follows: It is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned premises shall, at any time after the making of and during the time this policy would otherwise continue in force, be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra hazardous,

or specified in the memorandum of special hazards, in the terms and conditions annexed to this policy, or for the purposes of storing therein any of the articles, goods or merchandise, in the same terms and conditions denominated hazardous, extra hazardous, or included in the memorandum of special hazards, except herein specially provided for, or hereafter agreed to by this company, in writing, to be added to or indorsed on this policy, then and from thenceforth, *so long as the same shall be so appropriated, applied or used,* these presents shall cease and be of no force or effect. And it further provides, " that the policy is made and accepted in reference to the terms and conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise especially provided for." The import of this language, it seems to us, is most clear, not that this policy shall be absolutely void to all intents and purposes, if the premises are misappropriated, but only while they are so improperly used, the insurance shall have no effect. This is apparent from the words we have italicized.

Admit the use was in violation of the first condition annexed to the policy, then the rights and obligations of the respective parties are to be determined by direct reference to all the terms and conditions of the policy, and we see by the express language of the condition we have quoted, that the policy was to be void and of no effect, only so long as an improper use of the premises shall exist; when it ceases to exist, then the policy is in full force. This is the view we take of it, and it is in accordance with that of other courts. *Lounsberry* v. *Protection Ins. Co.,* 9 Conn. 456; *Joyce* v. *Maine Ins. Co.,* 45 Maine, 168. The same may be said of the whiskey seen in the house, a long time before the fire occurred. Selling that liquor in small quantities to the boarders in the house, or others, will not vitiate the policy, as it is not prohibited by it. Even if it was an unauthorized use of the premises, it had ceased long before the fire.

But the question of increase of risk by such use of the pre-

mises was submitted to the jury, and they have by their find-
ing ignored the claim and pretenses of the appellants, and
believing they have found correctly on this point, we are not
disposed to disturb their verdict.

Another point made is, that Scroggs was an incompetent wit-
ness on account of interest. He was sworn and examined on his
*voir dire*, and stated he had no present interest in the result of
the suit, but could not say when he parted with his interest;
had at one time an interest in the insurance and in the pro-
perty insured; assigned his interest to the insurance company;
thinks he assigned his interest to McFarland; had an interest
in the property at the time of the fire; also in the notes and
mortgage; thinks he assigned the notes and mortgage to
McFarland; had an interest at the time of the fire, and when
proof of loss was made; never assigned his interest in the
policy to any one; never assigned his interest to any one
else except to the insurance company. He made the proof
of loss; never assigned to any one else except the insurance
company, and don't remember he ever told Farmer he was
interested.

The true test of the interest of a witness, is said, by law
writers, to consist in the fact that he will either gain or lose by
the direct legal operation and effect of the judgment, or that the
record will be legal evidence for or against him, in some other
action. 1 Greenleaf on Ev., § 390. He must have some cer-
tain, legal and immediate interest in the result of the cause, or
in the record. *Curtenius* v. *Wheeler*, 5 Gilm. 469. And this
interest must exist at the time when the witness is offered
for examination, or when his deposition is taken. *Frink* v.
*McClung*, 4 id. 576.

The plaintiff's counsel has failed to show the nature of the
interest Scroggs had after he had assigned the notes, mortgage
and decree, and the policy of insurance. We cannot perceive
any interest existing in him after these several assignments.
He does not appear to have had any direct interest that a par-
ticular verdict should be rendered in the cause, that he could
profit by in any way. He was a competent witness, so far as

we can understand, from the record, his real position. He seems indifferent between the parties.

It is also urged that Stewart and Scroggs had no interest in the notes and mortgage at the time of issuing the renewal receipt, and therefore the policy was void.

The proof shows that in January or February, 1860, the assignment was made to them by Long, of the policy, with the assent of the agent of the company, and of the notes and mortgage. This made them owners of all those securities, and whilst such owners, on the 17th of March following, the renewal receipt was issued to them, and the premium paid. It is true the assignment in evidence bears date July 7, 1860. The evidence of the notary, J. B. Boggs, establishes a prior agreement between Long and Stewart and Scroggs, about the sale to them, which he thinks was destroyed when this assignment of July 7 was made. Scroggs swore that the assignment and delivery to them of the notes and mortgage, was in February, 1860, though the purchase was made in January preceding.

But the appellants have acknowledged, by their own acts and conduct, the interest of Stewart and Scroggs, and cannot now allege against it. They received from them their sworn statement of interest and loss, and acknowledged them throughout all the proceedings, as the real parties in interest, never at any time previous, questioning their right to pay the premium and receive the renewal receipt. They are recognized as the only parties in interest, by the letters of the president of the company, of June 19 and July 17, 1861.

The objection that Stewart and Scroggs refused to assign their interest as mortgagees, we think is removed by the evidence. It is proved a tender of an assignment was made July 15th, 1861, another offer January 16, 1862, and the defendants on the trial showed that one was in their hands, dated November, 25, 1861. No objection was made at the time to the form or substance of the assignment.

Having noticed the principal objections made, we will now consider the instructions.

The plaintiff asked but one instruction, which was given and exception taken.    It is as follows :

The jury is instructed that the hitching of a horse in a building would not make the building more hazardous under the conditions of insurance, unless in addition, it was used as a common stable, and thereby brought within the condition of the policy.

Stables are denominated, in the memorandum annexed to the conditions of the policy, as special hazards, and subject to a higher premium on insurance.    The proof was, that a horse was kept in a small room attached to the main building, during the winter of 1860 and 1861, about six months, and there was hay and grain in the room where he was kept, for feed.    It was also proved that there was no occupancy of the building of any kind, for three or four months before the fire.

In the view we have taken of the rights and obligations of these parties, this instruction is objectionable.    The jury should have been instructed that the policy was of no effect whilst the room was used as a stable, but the premises being vacant for months previous to the fire, and no misuse of them shown as existing at the time of the fire, the policy was not avoided, and the plaintiffs were entitled to recover.    The defendants' fifth instruction was properly refused, for, notwithstanding the assignment by the plaintiffs, they still had an interest, as we have endeavored to show, in the subject matter of the insurance at the time of the fire.    Their sixth instruction was properly refused, because there was no evidence on which to base it.    The instruction is as follows:    "If the jury believe, from the evidence, that the plaintiffs, Long and Wetmore, were the owners of the mortgage interest insured in said premises at the time of the fire, and that upon this trial they have not proved they made the proofs to the defendant, as stated in instruction No. 4, they will find for the defendant."    The evidence shows most conclusively that, as early as January or February, 1860, all the interest of plaintiffs had been duly assigned to Stewart and Scroggs, with the assent of defendants, and they thereafter treated them as the owners of the insured

interest in the premises. There was nothing before the jury in the shape of testimony to raise such a belief.

The defendants also asked an instruction, marked 3, as follows: If the jury believe, from the evidence, that on the 23d of July, 1841, Stewart and Scroggs, through their attorney, Lanphere, refused to assign to defendant all their interest, without imposing conditions upon the defendant in the assignment, then the jury will find for the defendant, unless they believe, from the evidence, that the defendant afterwards and before the commencement of this trial, accepted an assignment of the mortgage interest in said property.

This instruction was refused in the terms asked, but the court modified it, and gave it as follows:

If the jury believe, from the evidence, that, on the 23d of July, 1861, or at any other time after the fire, Stewart and Scroggs, by themselves, or through their attorney, refused to assign to defendant all their interest, without imposing unreasonable conditions upon the defendant, in the assignment to defendant, then the jury will find for the defendant, unless they believe, from the evidence, that the defendant afterwards and before the commencement of this suit, accepted an assignment of the mortgage interest in the property. But the fact that Stewart and Scroggs insisted that they were not to be called on to pay any of the court costs in obtaining a decree on the mortgage, was not an unreasonable condition within the meaning of the first part of the instruction.

By condition fourteen of the policy, the party insured as a mortgagee is required to assign to the company the mortgage upon the premises insured, together with the debt secured thereby, or so much thereof as will be sufficient to pay the loss; and a refusal to execute such assignment shall operate to discharge the company from all liability under the contract. The instruction, as asked, required an assignment of all the interest of the assured in the mortgage, whereas they were only bound to assign as much of the mortgage debt as would cover the amount of the insurance. The modification was proper, and presented truly the rights of the parties; and if the claim was

32

assigned to the defendant, it was not an unreasonable condition that they should prosecute it at their costs, as they would become the real parties in interest.

But, apart from these rulings of the court, the case, on the part of the defendants, was placed in the most favorable aspect by the following instructions given in their behalf:

1. If the jury believe, from the evidence, that a part of the building *insured as a boarding house, was used and occupied as a stable* since the execution of said policy, and before the fire, without the written consent of said defendant, the jury will find for the defendant.

2. If the jury believe, from the evidence, that spirituous liquors were kept in a shop for sale in said insured building, without the consent of the company in writing, after the execution of said policy, and before the fire occurred, they will find for defendant.

4. Unless the jury believe, from the evidence or from the admissions made by defendant and read to the jury, that the persons sustaining loss in the said building on said premises insured, gave notice in writing to said company, or their agent, as soon after as possible, and delivered as particular an account of their loss or damage as the nature of the case would admit, signed with their own hands, and accompanying the same with their oath or affirmation, declaring the said account to be just and true, and showing what other, if any, insurance had been made on said property, and what was the whole cash value of the subject insured, and what was their interest therein, and in what general manner as to trade, merchandise or otherwise, the building insured, and the several parts thereof were occupied, if occupied at the time of the loss, and who were the occupants of such building, if occupied, and where and how the fire originated, so far as they know or believed, and also produce a certificate, under the hand and seal of a magistrate, notary public or commissioner of deeds, most contiguous to the place of the fire, and not concerned in the loss as a creditor or otherwise, or related to the insured or sufferers, stating that he had examined the circumstances attending the fire, loss or

damage alleged, and that he was acquainted with the character and circumstances of the insured, or claimants, and that he verily believed that they had by misfortune and without fraud or evil practice, sustained loss or damage on the interest insured in said property to the amount in such certificate stated, which shall have been certified to by the said officer, the jury will find for the defendant.

We cannot perceive any error unfavorable to the defendants in any of the instructions, and although the instruction given for the plaintiffs is objectionable, as we. view the case, it is not sufficiently so to reverse the judgment; when, upon the whole record, it appears that the right is with the plaintiffs, and that justice has been done.

There remains one other point to be considered. It is this: That the court refused to permit the defendants to withdraw their pleas. This, according to the decision in the case of *Ayres* v. *Kelly*, 11 Ill. 17, would be error; but it is not on this record assigned as error.

We are, however, as it is a question of practice, not inclined to follow that decision, but to hold that it is discretionary with the court to allow it or to refuse it.

From the best consideration we have been able to give this case, we are fully satisfied there is no error assigned on the record sufficient to reverse the judgment, and that justice has been done the parties. We accordingly affirm the judgment.

*Judgment affirmed.*