## THE TRADERS' INS. CO. *v.* THOMAS D. CATLIN,

### and

## ·THE NATIONAL FIRE INS. CO. *v.* THOMAS D. CATLIN.

*Filed at Ottawa November 9, 1896.*

1. INSURANCE—*effect of former change of use of building—increased hazard.* A change of the use of an insured building increasing the hazard will not prevent recovery, where such use has been abandoned without the declaration of a forfeiture by the company before a loss occurs, and such increase of hazard in no way continued to affect the risk at the time of the loss.

2. SAME—*where increased hazard remains no recovery can be had.* Discontinuance, before loss, of a changed use of a building involving increased risk, will not entitle the assured to recover, where, at the time of the loss, there remains an increased hazard growing out of the former changed conditions.

3. EVIDENCE—*whether risk was increased is a subject for expert testimony.* Expert testimony is admissible upon the question whether the risk under an insurance policy was increased by certain circumstances, against a provision of the policy, especially where its determination calls for a degree of knowledge not likely to be possessed by an ordinary jury.

*Traders' Ins. Co. v. Catlin, etc.* 59 Ill. App. 162, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This record is brought to this court seeking to reverse the judgment of the Appellate Court for the Second District, in which the judgment of the circuit court of LaSalle county was affirmed in two cases wherein a judgment was rendered in favor of appellee, against the appellants severally, for $3014.08 each.

In January, 1893, appellee requested each of the appellants to issue a policy of insurance upon certain property, described as follows: "$160 on the frame granary, with shingle roof, situated about one hundred and fifty feet from above described carriage house, (referring to a build-

ing which was not destroyed and which is not in controversy here); $160 on boiler and engine, machinery, shafting and belting, and connections; and $2600 on the frame hay and stock barn, with gravel roof, including basement and foundations, situated one hundred and forty feet from above described granary, all situated on stock farm on section 16, township 33, north, range 14, east of third principal meridian, in Will county, Illinois. Permission granted to make repairs and alterations." Each of these companies issued policies as requested, without inspection. After the policies were issued a part of the barn was converted into a canning factory, with a capacity of 25,000 cans a day, where gasoline was used and much machinery was placed therein. Between the granary and the hay and stock barn, and about seventy-two feet from each, was placed in the ground, about five feet below the surface, an iron tank with a capacity for five barrels of gasoline. The machinery of the canning factory was connected with this gasoline tank by a pipe, and by means of a fan, operated by the machinery in the granary, air was forced through one pipe into the tank, thereby generating a gas, which passed through the other pipe to the connecting machinery into six several jets, to be ignited for soldering purposes when canning corn. The canning machinery had been operated some ten days canning corn, and then work was suspended, and had been for five days, when the building and its contents were consumed by fire, on September 14, 1893.

The policy issued by the Traders' Insurance Company contains this provision: "If the building described * * * shall be appropriated to any other purpose than herein specified, * * * or the risk be increased * * * by any means within the control or knowledge of assured, or if petroleum or any of its products * * * are, under any circumstances, * * * in the building or buildings insured, * * * this policy shall, without the written consent of this company thereto be endorsed hereon, be-

163—17

come absolutely void. * * * Generating or evaporating within the building, or within one hundred feet thereof, of any substance for burning gas, or the use of gasoline for lighting or fuel, is prohibited, unless permitted in writing thereon."

The policy of the National Fire Insurance Company provides, among other things: "If the assured shall fail to make known to the company at once any fact or circumstance which renders the risk more hazardous than at the time of insuring, or if the hazard be increased by any means within the control of the assured, or if gasoline or petroleum or any of its products are deposited, used or kept, or burning gas is made, generated or carburetted within the building or contiguous thereto, then and in every such case this policy shall be void, unless consent is endorsed by the company thereon."

When the property was insured no flame or jet of any kind was used in the hay and stock barn. The fire which destroyed the building commenced about nine o'clock in the evening, at a point in the barn about one hundred feet from the canning machinery. Its origin is unknown. The buildings insured as a hay and stock barn were at the customery rates of one and one-quarter per cent. The rate for canning factories was two and one-half to three per cent for one year. With the Traders' Insurance Company canneries are prohibited risks. The assured had notice of the changed conditions.

On the trial eight witnesses who had experience in the insurance business, the inspection, examination and classification of risks, investigating the cause of fires, etc., testified the changed use of a part of the hay and stock barn increased the hazard; that whilst the increased hazard was great when the machinery was in operation, it was, if possible, even greater when the machinery was idle. The testimony was heard subject to objection,— the trial being before a judge without a jury,—but was held incompetent, and excluded on the final finding by

the judge. Certain propositions were asked by appellants to be held as law, which were refused. The questions presented on this record and assigned as error are as to the exclusion of the expert evidence, the refusal to hold as law propositions asked, and in holding the policies were in force at the time of the fire.

THOMAS BATES, and COLLINS, GOODRICH, DARROW & VINCENT, for appellants:

The leading case in Illinois upon this question is *Insurance Co.* v. *Wetmore*, 32 Ill. 221. In that case the policy provided that if there was a change in the use of the premises increasing the risk, "so long as the same shall be so appropriated, applied or used these presents shall cease and be of no force and effect." A careful reading of that case will show that all the courts of this State have been misled by it, and it does not decide what subsequent decisions of the Supreme Court say it does. It could not have been decided otherwise, under the provisions of the policy.

The doctrine of the Illinois cases is at variance with the weight of authority in other States, with the Federal decisions, with the text books and with the principles of law applied to the interpretation of all other contracts, and seems to have been based upon a misconception of the case of *Insurance Co.* v. *Wetmore, supra.* See *Williams* v. *Insurance Co.* 57 N. Y. 274; *Kyte* v. *Union Ass. Co.* 149 Mass. 116; Richards on Insurance, 67.

In May on Insurance (secs. 216-245) will be found an interesting discussion on the subject of increase of hazard, with comments on the unique position of Illinois as the result of *Insurance Co.* v. *Wetmore, supra.*

The court erred in excluding the expert testimony. Wood on Insurance, 586; Rice on Evidence, par. 194; Biddle on Insurance, par. 736; *Insurance Co.* v. *Rowland*, 66 Md. 236; *Cornish* v. *Insurance Co.* 74 N. Y. 295; *Luce* v. *Insurance Co.* 105 Mass. 297.

It was held in *Schneck* v. *Insurance Co.* 24 N. J. L. 448: "It is not error to ask a witness, who was an experienced fireman, whether in his opinion the risk from fire was increased by certain alterations in the buildings. For such purposes he is an expert." See, also, *Brink* v. *Insurance Co.* 49 Vt. 442; *Keene* v. *South St. Louis,* 40 Mo. 19; *Mitchell* v. *Insurance Co.* 32 Iowa, 424; *Daniels* v. *Insurance Co.* 12 Cush. 416; *Appleby* v. *Insurance Co.* 54 N. Y. 253; *Dean* v. *McLean,* 48 Vt. 412; *Hartman* v. *Insurance Co.* 21 Pa. St. 478.

Inasmuch as the evidence clearly shows that neither of the insurance companies in the case at bar, nor any of their representatives, had any knowledge of the violation of the terms of the policy, such violation was not waived. No man can be bound by a waiver of his rights unless it is made distinctly and with full knowledge of the rights which he intends to waive. 28 Am. & Eng. Ency. of Law, 527; *Montague* v. *Massey,* 76 Va. 314.

To establish a waiver of forfeiture the proof must show a distinct recognition of the validity of the policy, after knowledge of the forfeiture, by the person by whom it is claimed the forfeiture is waived. *Weed* v. *Insurance Co.* 116 N. Y. 106; *Robertson* v. *Insurance Co.* 88 id. 541; *Smith* v. *Insurance Co.* 3 Hill, 508.

A waiver cannot be inferred from mere silence of the company. *Titus* v. *Insurance Co.* 81 N. Y. 412.

Where an insurance company is ignorant of the fact of the violation of a condition of the policy, acts which ordinarily operate to waive the forfeiture will not do so. *Insurance Co.* v. *Wolff,* 95 U. S. 326; *Bennecke* v. *Insurance Co.* 105 id. 355; *Robertson* v. *Insurance Co.* 88 N. Y. 541.

SNOW & HINEBAUGH, for appellee:

Policies become inoperative only while the increased risk is in existence, and when it is terminated the liability of the companies recommences. *Insurance Co.* v. *Wetmore,* 32 Ill. 221; *Schmidt* v. *Insurance Co.* 41 id. 225; *Insurance Co.* v. *McDowell,* 50 id. 121; *Insurance Co.* v. *Garland,* 108 id. 220.

The doctrine of the above cases is substantially restated in *Insurance Co.* v. *Klewer*, 129 Ill. 607, and *Insurance Co.* v. *Armstrong*, 145 id. 469.

As holding the same doctrine as our own Supreme Court, we cite *Insurance Co.* v. *Moyer*, 97 Pa. St. 447; *Lane* v. *Insurance Co.* 12 Me. 44; *Willis* v. *Insurance Co.* 79 N. C. 286; *Insurance Co.* v. *Shoe Factory*, 80 Pa. St. 411.

The question whether or not there was, in the cases at bar, any increase of hazard, was one for the court, and such inquiry must be limited to the time of the fire. *Insurance Co.* v. *Steiger*, 13 Ill. App. 482; *Cornish* v. *Insurance Co.* 74 N. Y. 295; *Daniels* v. *Insurance Co.* 48 Conn. 105.

If we follow the doctrine of Rice on Evidence, and apply it to this case, it cannot be seriously questioned that the trial judge was right in disregarding the disquisitions and opinions of the so-called experts. We cite, however, the following cases on a line with the rule as laid down by Rice: *Gas Light Co.* v. *O'Brien*, 15 Ill. App. 400; *Insurance Co.* v. *Cotheal*, 7 Wend. 79; *Lyman* v. *Insurance Co.* 14 Allen, 329; *Stennett* v. *Insurance Co.* 68 Iowa, 674; *Thayer* v. *Insurance Co.* 70 Me. 531; *Mulry* v. *Insurance Co.* 5 Gray, 545; *Joyce* v. *Insurance Co.* 45 Me. 168; Rogers on Expert Testimony, 13; *Hopkins* v. *Railroad Co.* 78 Ill. 32; *Brink* v. *Insurance Co.* 49 Vt. 443.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The question of primary importance on this record is, were these policies in force at the time the property was destroyed by fire. In *New England Fire and Marine Ins. Co.* v. *Wetmore*, 32 Ill. 221, the conditions in the policy provided that if, after insurance, the insured buildings should be occupied in any way so as to render the risk more hazardous than at the time of insuring, or if the risk be increased by any means whatever within the control of the assured, such insurance should be void so long as the premises should be so appropriated, applied or

used.   In the application for insurance in that case the premises are described as a dwelling house, with some boarders.   The evidence showed that for a period previous to the fire, but not when the fire happened, a room attached to the main building had been used as a stable for a horse and the main building for a saloon, but at the time the insured property was destroyed it was vacant. On this state of facts it was urged the use of the property as a stable increased the risk, etc., and it was said (p. 244): "Stables are special hazards, for the insuring of which a higher premium is demanded than for a dwelling or boarding house.   But the proof shows that the fire did not occur whilst the small room was so used.   The premises had been vacant some months before the fire, and there is no proof going to show that this use of the room increased the risk or contributed in the remotest degree to the loss.   Had the fire occurred whilst it was used as a stable, then, doubtless, the policy would have been avoided.   The meaning of the condition is, if the house or premises shall be appropriated to any prohibited use, then, so long as it is so appropriated, the policy shall cease to bind the insurers."   It was in that case further said (p. 245):   "The import of this language, " (the contract in the policy,) "it seems to us, is most clear, not that this policy shall be absolutely void, to all intents and purposes, if the premises are misappropriated, but only while they are so improperly used the insurance shall have no effect.   *   *   *   By the express language of the condition   *   *   *   the policy was to be void and of no effect only so long as an improper use of the premises shall exist; when it ceases to exist then the policy is in full force."   This is a leading case in this State, and the court recognizes that it is not in accord with the decisions of New York, yet declares the rule to be as stated.

The above case was followed by *Schmidt* v. *Peoria Marine and Fire Ins. Co.* 41 Ill. 295, where the condition in the policy was:   "No fire in or about said building, except

one under kettle securely imbedded in masonry (used for heating water) and made perfectly secure against accidents." With this condition the contention of the company was, that it was a warranty that there should be no fire except under the kettle, and a breach would avoid the policy. It was held the words above used should be construed with reference to the condition of the property at the time of the insurance. A further condition of the policy was: "If, after insurance is effected, either by the original policy or by the renewal thereof, the risk be increased by any means, or occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect." The evidence showed the building insured in that case was destroyed by fire; that at the time there were therein two stoves, one on the first and the other on the second floor, in which fire had been after the insurance; that there had been no fire in the stove on the first floor for eight days previous to the destruction of the building, while in the stove on the second floor a fire was kindled at six o'clock A. M. and extinguished about eight or half-past eight, and about eleven o'clock P. M. the next night the destruction of the insured property occurred. The question was whether there was increased risk because of these stoves at the time of the fire, and it was said, (p. 298,) following the *Wetmore case*, "that the true construction of a clause like this was, that the policy became inoperative only while the increased risk was in existence, and when it terminated the liability of the company would re-commence."

The *Schmidt case* was followed by *Insurance Company of North America* v. *McDowell*, 50 Ill. 120, where it was said (p. 129): "It is likewise insisted that as to a portion of these policies appellees, by making repairs on the property after the insurance was effected, have violated one of the conditions which prohibited them from doing any act which should increase the hazard. In the case of *New*

*England Fire and Marine Ins. Co.* v. *Wetmore*, 32 Ill. 245, it was held that an increase of the hazard only suspended the policy during the continuance of the increased hazard, and when it terminated the liability of the company commenced. This rule is recognized and applied in the case of *Schmidt* v. *Peoria Marine and Fire Ins. Co.* 41 Ill. 295. If the hazard was increased by making those repairs, it had fully terminated and the liability had re-commenced long before the fire occurred."

In the case of *Insurance Company of North America* v. *Garland*, 108 Ill. 220, the policy contained this provision: "If the assured shall allow the building herein insured to become vacant or unoccupied, and so remain, * * * unless the consent of this company be endorsed hereon, the policy shall become void." For a long time before the fire which destroyed the insured building it had been vacant, and was so at the time of its destruction, but it was held there could be no recovery. It was also said (p. 226): "It is well settled, if the company should not exercise this power" (to declare the policy forfeited) "while the accused is in default, and the premises should again become occupied, its right to do so would cease and its liability on the policy would again attach." This principle is also sustained in *Germania Fire Ins. Co.* v. *Klewer*, 129 Ill. 599.

We are asked to overrule these decisions, as not being in line with the current of authority. These decisions, whilst in conflict with the courts of New York and some other States, have so long been the rule in this State that we are not disposed to qualify or in any manner depart from the rule announced therein. That rule is: though there be a change of risk by reason of an increased hazard, which would avoid the policy if declared forfeited by the company, yet where the company has not declared the policy forfeited and the cause for the increased hazard no longer exists, and there is no increased hazard by reason of former changed conditions, then, the policy

being for insurance for a certain period, the contract of insurance will be construed, and the fact determined whether there was an increased risk at the time of the fire which in any manner was conducive to the loss. If a loss occurs during the increased hazard a recovery will be defeated. If a former increase of hazard has ceased to exist, and that increase of hazard at that former time in no way has affected the risk when the loss occurs, no reason exists why a forfeiture should result from a cause which occasions no damage. The insurance companies insert clauses and conditions for their own protection and dictate their terms, and on every principle of construction such clauses are construed most strongly against those who dictate and insert them. No violence is done the language used by the construction we have adopted and no injustice is done either party to the contract.

It never has been held by this court that if the change of condition has effected results which continue, and cause an increase of hazard to exist at the time the property is destroyed, the removal of the cause of the increase of hazard would prevent the company from showing the result and effect of the former act changing conditions. In the *Wetmore case* it was said (p. 245): "Even if it was an unauthorized use of the premises it had ceased long before the fire. But the question of increase of risk by such use of the premises was submitted to the jury, and they have, by their findings, ignored the claim and pretenses of the appellants, and believing they have found correctly on this point we are not disposed to disturb their verdict." In the *Schmidt case* it was said (p. 299): "The point for the consideration of the jury was, not whether an increase in the number of fires in a building does or does not ordinarily increase the risk, but whether in the case then before the court the risk to the building at the time it was destroyed, at eleven o'clock at night, was or was not increased by the two stoves, in one of which there had been no fire for eight days and in the

other none after eight and a half o'clock of the preceding morning." Both these cases recognize the right of the company to show that the act of the assured increased the hazard at the time of the loss. If the hazard was not increased at the time of the loss, it is fatuous to say that long before some act was done that increased the risk then, but did not affect the risk at the time of the loss. Whether there was any increase in the hazard which affected the risk at the time of the loss was a question of fact. If, as a matter of fact, there was no increase of hazard, the policy was in force and of binding effect and the plaintiff had a right to recover thereon. This construction, and the rule to which we adhere, are more consonant with sound reason than is the rule adopted by those courts with which we are not in accord. That a recovery on a policy on a building in the center of the burned district in Chicago's great fire should be defeated because a gallon of gasoline was therein kept and used a year before that time does not commend itself as a reasonable rule. If the policy was rendered void by that act, that would have resulted even though it was in no way conducive to the loss.

The next question for consideration is, was the evidence of the witnesses offered as expert testimony admissible. The rule is thus stated in Rice on Evidence (par. 194): "The governing rule as to the admission of expert testimony, decided from the cases permitting the opinions of witnesses, is, that the subject must be one of science or skill, or one of which observation and experience have given the opportunity and means of knowledge which exists in reason rather than in descriptive facts, and therefore cannot be intelligently communicated to others by one not familiar with the subject, so as to possess them with a full understanding of it."

In *Cornish* v. *Farm Buildings Fire Ins. Co.* 74 N. Y. 295, it was said: "There can be no doubt that the judge was right in treating the question of increase of risk as one

of fact.   The authorities are not so harmonious as to whether it is a question to be determined by the evidence of experts, though the weight of authority is in favor of the admission of such testimony to guide the jury as to the materiality of circumstances affecting such risk, especially when the determination of the question calls for a degree of knowledge not likely to be possessed by an ordinary jury."

*Planters' Mutual Ins. Co.* v. *Rowland,* 66 Md. 236, was a case where the rates of insurance charged upon burr flouring mills and roller mills, respectively, were held admissible in evidence, to be considered, in connection with other facts, in determining the question whether the risk was increased by changing the machinery of a mill from a burr to a roller process.   The court said: "We do not mean to say that the rates of insurance are to be considered a decisive test as to the risk, but it is evidence to go to the jury, to be considered, in connection with other facts, in determining the question of increase of risks."

*Luce* v. *Dorchester Mutual Fire Ins. Co.* 105 Mass. 297, is a case which further exemplifies the rule, already stated in Rice on Evidence, that proof by experts in the business of insurance is admissible; that it is the usage of insurance companies generally to charge such premiums. The court said: "But whether such a change in the occupation is material to the risk might also be tested by the question whether underwriters generally would charge a higher premium.   That is discussed in *Merriam* v. *Middleton Ins. Co.* 21 Pick. 162.   That being a matter within the peculiar knowledge of persons versed in the business of insurance, testimony of such persons on that point is admissible.   *   *   *   But the testimony of witnesses having a requisite knowledge and experience that it was the custom of insurance companies, generally, to charge extra premiums upon dwelling houses understood or known to be unoccupied, is competent."

*Leitch* v. *Atlantic Marine Ins. Co.* 66 N. Y. 100, was an action upon marine insurance. The testimony of underwriters and experts was held admissible upon the question of materiality of circumstances affecting the risk, and while evidence of this kind is necessary for the reason that the fact is not sufficiently obvious to enable the court to decide it without such aid, the testimony is to be treated the same as that in reference to any other fact, and if there is no conflict, the fact of materiality or immateriality must be held as the witness testified. The court said: "It is well settled that the testimony of experts, and especially of underwriters as such, is admissible upon the question of materiality of circumstances affecting the risk. This was so decided in *Lanagan* v. *Universal Ins. Co.* 1 Pet. 170. (3 Kent's Com. 284.) When evidence of this character is necessary, for the reason that the fact is not sufficiently obvious to enable the court to decide it without aid, the testimony is to be treated as the testimony of credible witnesses upon any other fact, and if there is no conflict, the fact of materiality or immateriality must be held as all the witnesses testified. If there is difference of opinion, it then becomes a question of fact for the jury." This principle is sustained in *German-American Ins. Co.* v. *Steiger*, 109 Ill. 254, and *Schmidt* v. *Peoria Marine and Fire Ins. Co. supra.*

The rule deducible from these opinions is, that where a policy of fire insurance provides against an increase of risk, expert testimony is admissible where the question of materiality of circumstances as affecting the risk arises, especially where its determination calls for a degree of knowledge not likely to be possessed by an ordinary jury. We hold the expert testimony should have been admitted, and it was error in the trial court to refuse to consider the same.

What we have here said sufficiently disposes of the question on the holdings.

For error in excluding and refusing to consider the expert testimony the judgments of the Appellate Court for the Second District and of the circuit court of LaSalle county are each reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice Cartwright took no part.