[No. 8376. *En Banc.* August 6, 1910.]

## PORT BLAKELY MILL COMPANY *et al., Respondents*, v. SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, *Appellant.*[1]

CORPORATIONS—FOREIGN CORPORATIONS—ACTIONS—DOING BUSINESS IN STATE. A foreign corporation, to which a policy of fire insurance is made payable in case of loss, may maintain an action on the policy without having paid an annual license fee or otherwise complied with the laws relating to the doing of business in this state by foreign corporations.

INSURANCE—FIRE INSURANCE—POLICY—WARRANTIES — SPRINKLER SYSTEM—TEMPORARY SUSPENSION. The temporary violation of a "sprinkler" clause in a fire insurance policy, whereby it was "warranted" that due diligence be used that the automatic sprinkler system shall at all times be in good working order, does not prevent a recovery on the policy, where such temporary suspension of the working order of the system was not in existence at the time of the fire and the damages were not the result of the breach.

SAME—POLICY—CONSTRUCTION—"WARRANTY"—USE OF WORD. A policy of insurance is to be construed in the light of the intent of the parties, and the use of the word "warranted" adds nothing to the force of a stipulation that does not necessarily constitute a warranty; especially in view of the rule that the courts should, in case of any doubt, lean against any construction that imposes upon the assured the obligation of a warranty or where it would work a forfeiture, unless it plainly appears that such was the intention.

[1]Reported in 110 Pac. 36.

SAME—POLICY—CONSTRUCTION—SPRINKLER CLAUSE. A "sprinkler" clause in a fire insurance policy whereby the assured "warranted" that due diligence be used that the automatic sprinkler system shall at all times be in good working order, will not be construed to be a warranty, working a forefeiture of the policy for its temporary violation at a time other than when the loss occurred, where the policy expressly provided that for the violation of several other stipulations on the part of the assured the policy should be void and immediately cease, and made no such provision in connection with the sprinkler clause; this, on the principle of *expressio unius est exclusio alterius.*

SAME—BREACH OF SPRINKLER CLAUSE. A policy warranting that diligence shall be used that an automatic sprinkler system shall at all times be in good working order, does not warrant that the system shall be in good working order at all times; and the defense of breach of warranty, because of a temporary suspension of the system while repairs were being made, is not available where the court finds and all the evidence shows that due diligence was at all times used and that the system was in good working order at the time of the fire.

MORRIS, J., dissenting.

Appeal from a judgment of the superior court for Kitsap county, Yakey, J., entered May 5, 1909, upon findings in favor of the plaintiffs, after a trial before the court without a jury, in an action on a fire insurance policy. Affirmed.

*H. T. Granger* and *Hughes, McMicken, Dovell & Ramsey,* for appellant.

*Hastings & Stedman, Walter S. Fulton, C. D. Sutton,* and *Titus & Creed (Dorr & Hadley,* of counsel), for respondents.

## ON REHEARING.

DUNBAR, J.—Action on fire insurance contract. Judgment was obtained in the superior court by the insured, respondents in this case, on a fire insurance policy issued by the appellant. An appeal followed, and the judgment was reversed by a majority decision of Department One of this court, filed January 14, 1910, to which reference is made for a statement of the case. 56 Wash. 681, 106 Pac. 194. A petition for rehearing was filed, addressed to the court *en*

banc. Said petition was granted, and the case again argued, and it is now here for final determination by the whole court.

There were three contentions made by the appellant in the first argument of the case: (1) That the Detroit Trust Company could not have maintained this action; (2) that the policy was avoided by the breach of a warranty therein contained; and (3) that the automatic sprinkler system connected with the mill plant was not in working order at the time of the fire. It was stated in the opinion that each of these contentions had been considered, but that, in view of the conclusion reached on the second, the first and third would not be discussed. Inasmuch, however, as the first proposition lay at the threshold of the case and was determinative of the right to bring the action, the court must have decided that proposition against the contention of the appellant before it proceeded to the determination of the second proposition. In any event, we think the technical objection is without merit, for all the reasons urged by respondents. We have given painstaking consideration to the third proposition, for it involves the actual merits of this controversy. But from an examination of the long statement of facts, containing more than six hundred pages, we are not convinced that the findings of the trial judge were not sustained by the weight of the evidence, and will therefore consider the case from the standpoint of such findings.

The sprinkler provision, appearing on a rider attached to the policy, was as follows:

"Warranted by the assured that due diligence be used that the automatic sprinkler system shall at all times be maintained in good working order."

Privilege was given the assured to make additions and repairs. The fourteenth and fifteenth findings of the court bearing on this proposition are as follows:

"(14) That on or about the 29th day of January, 1907, it became and was necessary, essential, and requisite to the alterations, and repairs be made to that portion of said plain-

tiff's sawmill building, which was known as the lath mill, and.
business of the Port Blakely Mill Company that an addition,.
on or about April 1st, 1907, it became and was necessary—
in order to make the automatic sprinkler equipment more
efficient, and in order to extend the automatic sprinkler equip-
ment to the addition to that portion of said plaintiff's mill
building known as the lath mill, and in order to have all of
said sawmill building, including said lath mill, protected by
automatic sprinkler equipment—to make additions, altera-
tions, and repairs to what was known as the No. 3 automatic
sprinkler division in the easterly portion of said sawmill, and.
that accordingly, on or about the 29th day of January, 1907,
the plaintiff, Port Blakely Mill Company, commenced the
work of making said addition, said alterations and repairs
to said lath mill, and on or about April 1, 1907, commenced
the work of altering, repairing, and extending said No. 3
automatic sprinkler division to the new portion or addition
to said lath mill, and for that purpose, it was necessary,
essential, and requisite that the water be wholly turned off of
said No. 3 automatic sprinkler division, and that said repairs
and alterations could not be made to said sprinkler division
and said extensions thereof could not be made, unless the
water was turned off of said division. That said repairs
could not safely be made while said plaintiff's sawmill was in
operation; that plaintiff, Port Blakely Mill Company, on or
about April 1st, 1907, had progressed with the work of said
additions, alterations and repairs to said lath mill sufficiently
to enable it to operate said lath mill, and accordingly the
lath mill was put in operation after said date. That said
Port Blakely Mill Company continued with the work of
making said repairs and alterations and extensions to said.
sprinkler division with due diligence, and at all times used
due diligence that the automatic sprinkler system should at
all times be maintained in good working order; and on April.
21, 1907, the said alterations, repairs, and extensions to said.
sprinkler division were so far completed that the water was
wholly turned on in said sprinkler division No. 3; that said'
water was turned on until and during said fire, No. 3 auto-
matic sprinkler system, and all other divisions of said plain-
tiff's sprinkler system in said mill, were supplied with water
in such quantities and with such pressure, that the heat pro-
duced by said fire in and about said mill did melt and release

said sprinkler heads attached to said No. 3 automatic sprink-ler division and all other parts of said sprinkler system in said mill, and permitted the water to flow through the same and out through the pipes distributed throughout said mill, and caused said water to be sprinkled upon said fire. That said sprinkler system in said mill, in all its parts and divisions, was in good and thorough working order at the time of and during said fire.

"(15)   That said fire originated under what was known as sprinkler division No. 4 in said sawmill building of said Port Blakely Mill Company immediately to the westerly in said mill building of said sprinkler division No. 3 aforesaid; and said fire did not originate in said sprinkler division No. 3 aforesaid; said fire originated at what was known as the friction pulley of and under the burner conveyor on the main floor beneath the sawing floor of said sawmill, and spread immediately on belts and pulleys above the sawing floor to the roof of said sawmill building, causing the sprinklers in the roof of said mill to operate as the fire reached the roof; but said fire rapidly spread beyond the control of said sprinklers."

So that it must be conceded, that there was no lack of diligence; that the sprinkler system was in operation at the time of the fire; that the violation of the contract, if there was any violation, was not the cause of the fire, and that the fire did not even originate in the sprinkler division where the repairs had been made. It must, therefore, readily be seen that, if our former opinion is sustained, it will not be upon any equitable ground, but by reason of sustaining the hard and inflexible rule contended for by appellant, that the covenant or agreement in this case amounted to a warranty or a statement of a condition precedent, a temporary violation of which would preclude a recovery, even though it affirmatively appear that such temporary suspension was not in existence at the time of the fire and could not possibly have been the cause of the fire. This rule seems to be opposed to our primary conception of fair dealing, is not practiced or tolerated in our everyday affairs with each other, is not a commendable rule of action under any circumstances, and is

diametrically opposed to the general rule that only such damages can be recovered from the breach of a contract as are shown to be the result of such breach. This rule has stood the test of time, because it is based upon common sense and fair dealing, and no court has ever felt called upon to apologize for it or distinguish it out of existence.

Of course, it is fundamental that courts cannot make contracts for parties, and it follows that they must enforce such contracts as are made; but in interpreting contracts, they should not be bound by hard and fast rules or definitions which evidently were never within the minds of the contracting parties. Insurance contracts, like all other contracts, should be construed with reference to what the parties meant, when interpreted in the light not only of the language employed, but of the evident object of the contract, the benefits secured on one hand, the perils or risks sought to be avoided on the other. They should not be so construed as to work a forfeiture of either party's rights, or to defeat the very object of the contract for which a price has been paid, unless it plainly appears that such was the intention of the contracting parties, and that the effect of the language of the contract was well understood by them when the contract was entered into; and it ought in reason to be a sign to the court that there has been a misapprehension on the part of the contracting party whose rights are thus contracted away that the contract was not understood. Especially is this true in this character of contracts, where the language of the contract is the language of the insurance company whose duty it is to see to it that, where unreasonable and one-sided provisions are incorporated into a contract, the contract is understandingly entered into.

This was the rule of interpretation indorsed by this court in *Poultry Producers' Union v. Williams*, 58 Wash. 64, 107 Pac. 1040, referred to by appellant in its reply brief in support of the contention that it was the settled law of this state that the breach of a warranty rendered the policy void

even though the breach may have ceased at the time of the loss. Of course, the ordinary expression was indorsed that the truth of a warranty is a condition precedent, and there is no real objection to this statement if it means that the insured intended the representation to be a warranty which would render his contract void whether it was the cause of the loss or not. But to render a decision valuable on any given point, it is necessary to be informed what the case was which the court was deciding, and to construe the language used with reference to the facts discussed. That was an action by one Williams, an employee of the Poultry Producers' Union, who was afterwards made secretary-treasurer and manager of the company. In this position a fidelity bond was required, and an application was made and signed by the president of the company. Among other questions asked and answered were the following: "(13) When were his accounts last examined? A. September 11, 07. (14) Were they at that time in every respect correct and funds on hand to balance? A. Yes. (15) Is there now or has there been any shortage due you by bondsmen? A. No." And the application contained the stipulation that: "It is agreed that the above answers are to be taken as a condition precedent and as the basis of the said bond applied for." It was further conditioned that, "if the employee's written statement hereinbefore referred to shall be found in any respect untrue this bond shall be void." It occurred that the answers to some of the pertinent questions were not true, and the insurance company resisted the payment of the policy on that ground; and the court said, in passing upon the question:

"Whether the answers made by the applicant for a policy of indemnity or insurance are warranties or mere representations must depend upon the character of the question and its answer, the opportunity of the insurer to guard against the representation in the light of its consequences, or whether it is material to the risk."

It will be seen, that in that case the company had no way to guard against the representation; that it certainly was

material to the risk, and continued to be material to the risk, for it affected the reputation and character of the party upon whom the risk was placed. This was a risk that would be a continuing risk running throughout the life of the insurance, a different proposition altogether from the one at bar, where, if there had been a violation of a condition at some time past, such violation had ceased at the time of the loss, and could not possibly, in any event, have had any effect upon the loss.

In this connection counsel for appellant also relied upon *Hoeland v. Western Union Life Ins. Co.*, 58 Wash. 100, 107 Pac. 866. That also was a case where the defense was meritorious, the risk having been taken on representations concerning the health of the applicant, and it afterwards appearing that the representations were not true, the company refused to pay the policy. There could have been no suspicion of the violation of the representations in this case, for if the representations were not true, as we have just remarked in the other case, their effect would be to follow the risk through the life of the assured, and to finally effect the loss. It is true that the court, in discussing the case, said:

"The rule is that, when a representation made by an applicant for insurance is carried into a contract and expressly made a part of it, it becomes a warranty, and its materiality is settled by the agreement of the parties";

citing Elliott on Insurance, § 102. But that statement must have been made with reference to the facts in the case, and the writer of the opinion could not have meant to convey the idea that it would apply to all cases even where there was a discontinuance of the violation, for the same authority cited, viz., Elliott on Insurance, in § 205, expressly says that such is not the rule under the weight of authority. Section 205 is as follows:

"The decisions are conflicting upon the question of the effect of a violation of a condition in a fire insurance policy. The weight of authority seems to support the view that a

violation of a condition that works a forfeiture of the policy merely suspends the insurance during the violation, and if the violation is discontinued during the life of the policy and does not exist at the time of the loss, the policy revives and the company is liable, although it had never consented to the violation of the conditions in the policy, and such violation has been such that the company could, had it known of it at the time, have declared a forfeiture therefor."

But this question has been decided by this court in *Hart v. Niagara Fire Ins. Co.*, 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86, and decided on principles applicable to and necessary to the decision in this case. In that case the stipulation was as follows:

"It is understood and agreed that during such time said mill is idle, or not in operation, a watchman shall be employed by the insured to be in and upon the premises constantly, day and night."

The contention of the appellant was that the terms of the policy constituted the measure of the insurer's liability and, in order to recover, the insurer must show himself within these terms. In other words, the compliance of the insured with the terms of the contract was a condition precedent to the right to recover, and the court instructed the jury that, if they believed from the evidence that at any time during the existence of the policy the assured failed to keep a watchman while the mill was not in operation, plaintiffs could not recover, adding "unless you further find from the evidence that said fire was not due to, or the result of, their failure to keep such watchman." That instruction was sustained by this court. The stipulation or representation made in that case was as strong as the representation made in this case, with the exception that the word "warranted" is used in the case at bar, instead of the words "it is understood and agreed." Here it is "warranted" that due diligence be used that the automatic sprinkler system shall at all times be maintained in good working order. There it was "understood and agreed" that such and such things should be done.

In our judgment the word "warranted" adds nothing to the force of the stipulation. It is well understood—in fact, it is conceded—that the expression of the word "warranty" does not necessarily constitute a warranty; that there may be warranties without the use of the word; that there may not be warranties when the word is used. In Charles Dickens' Child's History of England, in a review of the character of Lord Dunstan, the author said that, after he died, the people called him a saint; but naively remarked that calling him a saint did not make him a saint, any more than calling him a coach horse would make him a coach horse. And so it is with the stipulation in this case. The word "warranty" is of such general signification and of such general and discursive use that the expression as used here is absolutely without any legal signification. It is common for people in ordinary conversation to say that "I will warrant this" or "I will warrant that," or "I warrant this," "I warrant you" that so and so will happen, or will not happen, when there is no intention whatever on the part of the speaker to bind himself to make good the expression. The rule of construction must be that the word used is to be construed in its ordinary signification. The legal signification may have been understood by the insurance company when it employed this word, but in order to avail itself of such legal signification, it must appear that the other contracting party also understood it. While there may have been some things said in the discussion of the *Hart* case, as there generally is in the discussion of cases, which were not material to the decision of the case, a review of it will show beyond question that the essential idea in the case was the same as the essential idea here, viz., whether, by reason of a breach which did not continue, the policy was avoided. The court, in discussing the case, said:

"In an ordinary contract no damages can be recovered by reason of a breach, if the breach does not result in damage. In this case, if the rule contended for by appellants should

prevail, if the respondents had failed or neglected to keep a watchman for one day, and the mill had not burned for a month afterward, and it positively appeared that the fire was in no way attributable to such neglect or breach, the company could escape its liability by reason of a breach which was entirely immaterial and which in no way contributed to the damage."

It will be seen that this language is especially applicable to the case at bar, where it appears affirmatively from the findings of the court that the fire was in no way attributable to the breach in relation to the maintaining of the sprinkler system, and that such breach had been corrected before the fire. Again, it was said in that case, that

"The rule is universal that statements contained in the application will not be construed to be warranties if elsewhere in the contract there can be found reason to suppose that such was not the clear understanding of the parties";

and the court proceeded to show, by other provisions of the contract, that such could not have been the understanding.

So in this case, as showing that it was not the intention of the contracting parties that the representation in regard to the sprinkler should not work a forfeiture of the contract or render it void, there are certain statements or provisions and representations made in the contract in which it is especially provided that a forfeiture or avoidance of the contract shall be the result. For instance, in the watchman clause, after stating as does the sprinkler clause, that "it is warranted by the insured that whenever any of the following named parts of the plant," etc., shall be idle, it is stated that, "if any of the above named parts is idle or not in operation for a period of more than thirty days without the written consent of the company, this policy shall be void." The same provision substantially is in the "reduced rate average clause," the language being:

"In consideration of the reduced rate at which this policy is written it is expressly stipulated and made a condition of this contract that this company shall be liable for no greater

proportion of any loss than the amount hereby insured bears to seventy per cent of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

The term "made a condition of this contract" is probably equivalent to a stipulation that the contract shall be void if the condition is violated. Again, there is the following stipulation:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the substance thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud," etc.

There would be nothing unconscionable in construing such provisions or stipulations in a contract of this kind as warranties, for the concealment or misrepresentation of any fact would work an actual hardship upon the insurance company. Again, it is provided:

"If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease"—

another reasonable provision which is stated so definitely that there is left no room for controversy as to what was meant. Again:

"This policy may by a renewal be continued under the original stipulation, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void"—

another positive expression concerning the avoidance of the contract, based upon reason and good conscience. In the *Hart* case, *supra*, certain similar conditions were reviewed, and the court held that, under the rule of *expressio unius est exclusio alterius*, the particular clause could not be construed to be a warranty. That rule applies with especial clearness

to this case, where so many provisions provide especially that the contract shall be void if they are not complied with, and where there is no such provision in the representation relied upon. In that case, quoting from May on Insurance, § 164, it was said:

"They are not necessarily warranties because they appear on the face of the policy. In order to have the force of a warranty, the statement must indeed constitute a part of the contract; but it by no means follows that every statement which constitutes a part of the contract is therefore a warranty. Whether they are so or not will depend upon the form of expression used, the apparent purpose of the insertion, and sometimes upon the connection or relation to other parts of the instrument."

That quotation is also expressly applicable to this case, for contrasting the form of the expression used in this representation relied upon and the form of expression used in the other representations which we have noticed, and considering the relation of the stipulation discussed to the other parts of the instrument, it must appear that it was not the intention of the parties to constitute the representation a warranty. That case has stood as the law of this state since its announcement in October, 1894, up to the time that the opinion was rendered in this case, and should not now be abrogated without being specially overruled.

But, in view of the fact that we are called upon to overrule an opinion announced by a department of this court, we will examine the authorities generally, and especially those relied upon in the opinion to sustain the decision, with a view to ascertaining if the cases cited, in consideration of the facts of the cases which were before the court, actually do sustain the appellant's contention. In the first case cited, viz., *Daniels v. Hudson River Fire Ins. Co.*, 12 Cush. 416, 59 Am. Dec. 192, it will be found that it was expressly stipulated that, under certain conditions, the insurance should be void and of no effect. In addition to the fact that the policy pro-

vided that, if any misrepresentations were made, the policy·
should be void and of no effect—a statement which is not in
the provision under discussion, the decision was against the·
contention of the insurance company, the court saying:

"The defendants, relying upon a violation of the state--
ments in the application, contended that these statements.
were warranties or conditions, and if they were not strictly
and literally true at the time of the application, that the·
policy was void; and that if they were then true, and the·
plaintiffs afterwards ceased to comply with them, the policy
thereupon became void, whether the same were or were not
material to the risk. But the presiding judge instructed the·
jury, that the statements of the application were not war-
ranties, requiring an exact and literal compliance, but that
they were representations; and as such, must have been sub-
stantially true and correct as to things done, or existing, at
the time the policy was issued, and that so far as they re-
lated to the future—to the things to be done, and rules and
obligations to be observed—they were stipulations, to be·
fairly and substantially complied with."

The supreme court said:

"The court are of opinion, that looking at the policy and
the application, this instruction was correct."

Then follows a portion of the quotation set forth in the·
opinion:

"There is undoubtedly some difficulty in determining by
any simple and certain test what propositions in a contract
of insurance constitute warranties, and what representa-
tions."

In Cooley's Briefs on the Law of Insurance, page 1133,.
that author says:

"In accordance with the principle, discussed in subdivision
(b) that warranties are part of the policy, it may be laid
down as the well-settled rule that, subject to qualifications
to be discussed hereafter, all statements regarding the risk,
contained in or appearing on the face of the policy, are war-
ranties."

But the qualifications thereafter discussed render the rule·

announced almost without value, for no court has gone to
the extent of holding that all statements regarding the risks
contained in or appearing on the face of the policy are war-
ranties; and the cases cited by Cooley to sustain the an-
nouncement made in the text treat mostly upon the qualifica-
tions which are mentioned in the citation, and hold almost
uniformly that, where there is any doubt as to whether a
statement in an insurance policy is an express warranty, the
court should lean against that construction which imposes
upon the assured the obligation of a warranty. In one of
the cases cited, *National Bank v. Union Ins. Co.*, 88 Cal.
497, 26 Pac. 509, 22 Am. St. 324, it was held that, although
the code of that state provided that a statement in a policy
of a matter relating to the person or thing insured or to
the risk as a fact is an express warranty, if taking the entire
policy in all its terms and language it can be seen that such
was not the intention of the parties, the statement of fact
cannot be deemed an express warranty. *Redman v. Hart-
ford Fire Ins. Co.*, 47 Wis. 89, 1 N. W. 393, 32 Am. Rep.
751, does not, either in principle or in the facts, sustain the
opinion. There the court laid down the general rule that a
stipulation in an application for fire insurance should be
construed in a doubtful case most strongly against the in-
surer by whom it was framed; and that, in a doubtful case,
that construction of a contract which will save it is to be
preferred to one which will destroy it; that the use of the
word "warranty" in a contract does not necessarily control
its construction; there may be a warranty without the use
of that word, and its use will not always create one; that the
stipulation in the policy, that the application shall be con-
sidered a warranty by the insured, must be construed to
mean such a warranty as is stipulated in the application it-
self. In that case, in answer to the question, "What material
was used in lubricating the machinery?" the assured an-
swered: "Lard and sperm oil"; and to the questions whether
the machinery was regularly oiled and, if so, by whom and

how often, the answer was: "Yes, by engineer and miller, as often as necessary." The proof was, that during the whole life of the policy, an oil known as "Fine Engine Oil" was constantly used in the mill for lubricating purposes, and that the machinery was not usually oiled by the engineer or miller, but by another person specially employed by plaintiffs for that purpose. The circuit court held that the answers to the above questions were absolute and continued undertakings in the nature of express warranties, and that the failure by the plaintiffs to use lard and sperm oil and to have the machinery oiled by the engineer and miller invalidated the contract of insurance, and released the defendant from any and all obligations under it, and the plaintiff was nonsuited. This judgment was reversed by the supreme court, the court saying:

"The stipulation was framed by the insurer, and had it been intended to require the insured to go beyond the interrogatories and disclose facts not called for therein (if any existed) material to the risk, a general interrogatory calling for such facts would have been inserted; or, at least, the stipulation would have been framed to express that intention more clearly. We cannot assume that the insurer would leave its intention in that behalf to rest in uncertain and doubtful inference, when it was so easy to express it clearly and unmistakably."

In *Wood v. Hartford Fire Ins. Co.*, 13 Conn. 533, 35 Am. Dec. 92, while the court laid down and indorsed some of the most radical rules, going so far as to state, that any statement or description, or any undertaking on the part of the insured, on the face of the policy which relates to the risk, is a warranty, and that whether this is declared to be warranty *todidem verbis* or is ascertained to be such by construction, is immaterial; that in either case it is an express warranty and a condition precedent; yet, as we have before indicated, to avoid the harshness of this rule, the court discriminated the facts in the particular case involved and decided the case in favor of the plaintiffs.

In *Moulor v. American Life Ins. Co.*, 111 U. S. 335, the court reaffirmed the doctrine that, when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty.  This contention arose out of answers to certain interrogatories in relation to the health of the applicant and the health of his ancestors, he having answered that his father, mother, brothers, or sisters had not been afflicted with consumption or any other serious family disease such as scrofula, insanity, etc., since childhood, and that there were no circumstances which would render an insurance on his life more than usually hazardous.  He also answered that as an applicant he "reviewed the answers to the foregoing questions, clearly understood them, and reaffirmed the answers"; and at the close of the series of questions was the following stipulation:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions; and it is acknowledged and agreed by the undersigned that this application shall form part of the contract of insurance, and that if there be, in any of the answers herein made, any untrue or evasive statements, or any misrepresentation or concealment of facts, then any policy granted upon this application shall be null and void, and all payments made thereon shall be forfeited to the company."

Notwithstanding this strong expression on the part of the appellant, the court held that, in the absence of explicit, unequivocal stipulations, requiring such an interpretation, it should not be inferred that a person took a life policy with the distinct understanding that it should be void and all premiums paid thereon forfeited if at any time in the past, however remote, he was, whether conscious of the fact or not, afflicted with some of the diseases mentioned in the question

to which he was required to make a categorical answer, saying that:

"If those who organize and control life insurance companies wish to exact from the applicant, as a condition precedent to a valid contract, a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowledge, and which even skillful physicians are often unable, after the most careful examination, to detect, the terms of the contract to that effect must be so clear as to exclude any other conclusion";

and reversed the judgment of the lower court which held that he could not recover.

Wood on Fire Insurance simply states the general rule which is contended for by the appellant, only as decided by certain cases. We have been unable to obtain Marshall on Insurance, but as near as we can gather from quotations, the harsh and inflexible rule sought to be invoked by the appellant has been supported by courts which drew their conclusions from this old work from which a majority of the courts have receded. In *McKenzie v. Scottish Union & National Ins. Co.*, 112 Cal. 548, 44 Pac. 922, the decision was based upon an absolute condition stipulated, and with the stipulation that, if the building should remain shut down for more than thirty days without notice, the policy should be null and void. The condition was broken without any excuse, and the court held that the provision was a warranty. In *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452, the policy provided that it should become void if, without notice to the company and its permission indorsed thereon, mechanics were employed in building, altering, or repairing, and it was held that a violation of this worked a forfeiture of the policy under the express stipulation of the policy that

"This policy shall be void and of no effect if, without notice to this company and permission therefor in writing indorsed hereon. . . . the premises shall be used or occupied so as to increase the risk . . .or the risk be increased . . . by any means within the knowledge or control of the assured, . . . or if mechanics are employed in building,

altering, or repairing premises named herein, except in dwelling-houses, where not exceeding five days in one year are allowed for repairs."

It is unquestionably true, however, that there are cases, though not by any means a majority of the hundreds of cases that have been decided upon this question, that hold to the strict rule contended for; but in grateful contrast to those courts which adopt the rule of strict construction by, it seems to us, making a fetich of words, expressions, and definitions, and attributing potent magic to the word "warranty," or words of similar import, comes like a refreshing breeze from the sea of judicial enlightenment, the voice of the supreme court of Kentucky, in *Germania Ins. Co. v. Rudwig*, 80 Ky. 223, where the rule is condemned. In the course of the opinion it was said:

"There is no doubt that an insurance company relies upon the truth of the representations made in either case, and equally certain that, if untrue and material to the risk, no inquiry will be directed for the purpose of determining whether the statement was fraudulently or innocently made. The injury to the insurer is the same, but when no injury can possibly result to the company, where is the breach and what is the penalty? It would certainly be no breach of warranty in a chattel if the quality was better than that warranted, unless the inferior article alone would conform to the wants of the purchaser; and if a breach, the damages would be merely nominal; but in regard to insurance contracts, that it neither increases nor diminishes the risk, and which could not have influenced the action of either party in making the contract, is seized upon as a ground for forfeiting the entire policy and depriving the assured not only of the benefits of the contract, but permits the insurer to retain all the premiums paid. . . . Such contracts are to be interpreted like other agreements, and must be governed by the same rules, good faith being especially required, as one of the parties is necessarily less acquainted with the details of the subject of the contract than the other."

The defense in this case was raised because the applicant had made a mistake as to the age at which his father and

mother died; and had also violated the provisions of the contract in relation to going outside of certain territory for a limited time, which was forbidden by the contract.

In *Westfall v. Hudson River Fire Ins. Co.*, 2 Duer (N. Y.) 490, where a clause in the policy of insurance declared against the use of camphene, etc., it was held that there was no evidence that the loss resulted from the use of camphene, and if there was no other evidence than the breach of the alleged warranty, the plaintiff was entitled to judgment. Said the court:

"If the use of camphene was meant to be prohibited in the same sense as the storage of gunpowder, we can discover no reason why the prohibition was not express, in the one case, as well as in the other. Had the intent been the same, it seems to us that such would have been the language; . . ."

and so in the case at bar. Had the intent been to make a warranty of the stipulation in relation to the sprinkler, it would have been so expressed as it was in the other clauses above mentioned.

The case of *Au Sable Lumber Co. v. Detroit Manufacturer's Mut. Fire Ins. Co.*, 89 Mich. 407, 50 N. W. 870, was cited by this court in the case of *Hart, supra*, and it was there said: "If it was intended that any failure to keep a watchman rendered the policy void, the parties would have so declared." That case was expressly in point in the case considered, and we think is as clearly in point in this case. To the same effect is *McGannon v. Michigan Miller's Mut. Fire Ins. Co.*, 127 Mich. 636, 87 N. W. 61, 89 Am. St. 501, 54 L. R. A. 739. *Selby v. Mut. Life Ins. Co.*, 67 Fed. 490, was practically the same kind of a case, where the parties had fixed the penalty for breach of warranty by stipulations in the contract in relation to some things, but not in relation to the matter which constituted the defense. In *Phoenix Assur. Co. of London v. Munger Improved Cotton Mach. Mfg. Co.* (Tex. Civ. App.), 49 S. W. 271, it was decided that a temporary breach of a stipulation in a

policy to which there was not attached a specific forfeiture, which breach did not exist at the time of the fire loss, and which did not contribute thereto, does not prevent recovery on the policy. The appellant contends that this case is not applicable to the case at bar, but it seems to us that the case is exactly applicable, both as to what is stated in the opinion of the court, and as to the matters decided. In *Sumter Tobacco Warehouse Co. v. Phoenix Assur. Co.*, 76 S. C. 76, 56 S. E. 654, 121 Am. St. 941, 10 L. R. A. (N. S.) 736, where an insurance policy provided that an increased hazard within the knowledge of the insured would avoid the policy, the owner of the building insured rented to a tenant a portion thereof to be used for a business more hazardous than contemplated by the policy, and it was held not to avoid the policy, because the temporary hazard ended without loss and the loss occurred from another source, the court saying:

"And if a temporary change of possession increasing the risk while it lasts, but discontinued before the fire, does not totally avoid the policy, but simply suspends it during the prohibited use, the provisions of the policy above quoted cannot avail the defendant."

This case answers the contention that is made much of, that by reason of the provision in the policy that the sprinkler system should be employed, the insured obtained insurance at a considerably less price than he could have obtained it for if there had been no such provision. But it seems to us there is no merit in this contention, for the reason that the limited price was accorded to the insured because, by reason of the installing of the sprinkler system there would be less liability of fire, the object and efficacy of the system being to put out incipient fires. It may have been that that object was attained in this case many times before the fire which had occurred, through the agency of this sprinkler system. But, in any event, the object was attained and inured to the benefit of the insurance company, when it is conceded that the sprinkler system was in vogue and in good running order at the time of the fire; and when

it must be further conceded that, if it had not been installed at the time of the fire the insured could not have recovered at all. The case just quoted, in the course of its argument, says:

"The reasoning in *Kyte v. Ins. Co.*, the Massachusetts case just referred to, is that, unless the policy be regarded as at an end the moment the hazard is increased, the insurance company would be held to furnish insurance for which it had not received the compensation it was entitled to demand and which with knowledge of the facts it would have demanded. But this reasoning seems fallacious, for the insurer is generally held to be not liable at all if the fire occurs during the continuance of the increased risk and in consequence of it."

Appellant, in its reply brief, answers this case by saying that no warranty was involved in it, and there was no discussion therein of the law of warranty; but there was a decision of a case which involved the identical question which is presented in this case. The underlying principle was discussed and decided without, possibly, any mention of the word "forfeiture," and it is really a more helpful case in determining the question under discussion than if it had been hampered by a discussion of terms and expressions. In *New England Fire & Marine Ins. Co. v. Wetmore*, 32 Ill. 221, where a policy of insurance provided that, should the premises insured be applied during the term of insurance to any prohibited use, the policy thenceforth, and so long as the same should be so prohibited and applied or used, should cease and be of no force or effect, it was held that the application of the property to a prohibited use within the term would not affect the right of the assured to recover in case of a loss, if at the time of the loss the property was not being so improperly applied or used, and it did not appear that such antecedent misapplication or use increased the risk or contributed to the loss.

In *Schmidt v. Peoria Marine & Fire Ins. Co.*, 41 Ill.

295, it was held that, where it was provided in a policy of insurance, that:

"If, after insurance is effected, either by the original policy or the renewal thereof, the risk be increased by any means, or occupied in any way so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of none effect,"

these words are construed to mean that the policy shall become inoperative only while the increased risk shall be in existence, and when it terminates, the liability of the company shall recommence. This case was reaffirmed in *Insurance Co. of North America v. McDowell & Brown*, 50 Ill. 120, 99 Am. Dec. 497. In *Traders' Ins. Co. v. Catlin*, 163 Ill. 256, 45 N. E. 255, 35 L. R. A. 595, it was held that the change of the use of an insured building increasing the hazard will not prevent recovery, where such use has been abandoned without the declaration of a forfeiture by the company before a loss occurred, and such increase of the hazard in no way continued to affect the risk at the time of the loss, although there had been a stipulation that there should be no increase of hazard. The language in that stipulation was plain and emphatic, being as follows:

"If the assured shall fail to make known to the company at once any fact or circumstance which renders the risk more hazardous than at the time of the insuring, or if the hazard be increased by any means within the control of the assured, or if gasoline or petroleum or any of its products are deposited, used or kept, or burning gas is made, generated or carburetted within the building or contiguous thereto, then and in every such case this policy shall be void, unless consent is endorsed by the company thereon."

It was contended by the learned attorney for the insurance company in that case that the case which we have just cited from Illinois had been determined upon the authority of *New England Fire & Marine Ins. Co. v. Wetmore, supra,* and that that case had not really determined the questions raised in the subsequent cases and the question which was raised

in the case of the *Traders Ins. Co. v. Catlin*, now under consideration. But, notwithstanding that contention, which seems to have some merit in it, the court refused to retreat from the principles announced in the subsequent cases, and emphatically held that the representation was not a continuing one and did not avoid the policy. It is contended by appellant, as in the preceding case, that the court in Illinois was not considering a warranty, and that there was no discussion in the opinion as to a breach of warranty, and no reference whatever made to the law of warranty. But we have the same answer to make to this criticism that was made *supra*. It is insisted, however, that the supreme court of Illinois in the case of *Norwaysz v. Thuringia Ins. Co.*, 204 Ill. 334, 68 N. E. 551, expresses the view of the supreme court of that state on the subject of forfeiture. This case is also cited by appellant in its reply brief, but an examination of the case shows that it in no way contravenes the doctrine just cited. There the policy provided that it should be void if gasoline was kept on the premises excepting by permission, and the testimony shows that not only was gasoline kept on the premises between the time that the policy was issued and the time of the fire, but that it was on the premises at the time of the fire. The court in its opinion stated that that proposition had been firmly established and undisputed, and that the burden could not be thrown upon the insurance company to prove that the fire was attributable to the unlawful storing of the gasoline in the house. This opinion seems to be in consonance with both reason and authority.

In *Born v. Home Ins. Co.*, 110 Iowa 379, 81 N. W. 676, 80 Am. St. 300, where a policy on property provided a forfeiture for mortgaging it without the company's consent, and assured did mortgage a portion of the property, but before loss paid the incumbrance, it was held that such payment operated to restore the property to the protection of the policy, and hence plaintiff was entitled to recover for the loss thereof.

"The theory," said the court, "upon which an existing mortgage is held to be a violation of a clause in the policy against an increase of risk is that it does increase the risk."

But, according to the opinion of the court, there was no increase of the risk after the mortgage had been paid off. So the theory upon which the insurance company in this case stipulated for the installment of the sprinkler system was that such installment would decrease the risk. And it did increase the risk during the time it was not in working order, but the same reasoning would apply as in the mortgage case in holding that, after its installment, the increase of risk would be at an end. In *Athens Mut. Ins. Co. v. Toney*, 1 Ga. App. 492, 57 S. E. 1013, the policy contained the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, . . . if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for 10 days."

The house covered by the policy became vacant and unoccupied and so remained for thirty days, when it was reoccupied. The house was destroyed after reoccupancy. Held, that the policy did not become absolutely void by reason of the house having become vacant and remaining so for thirty days, but the insurance was merely suspended during the period of violation, and revived upon the reoccupancy of the house and became again of binding force and effect. In *Insurance Co. of North America v. Pitts*, 88 Miss. 587, 41 South. 5, 117 Am. St. 756, 7 L. R. A. (N. S.) 627, under a provision of a fire policy that it should be void if the building be or become vacant or unoccupied and so remain for ten days, where the building was unoccupied for more than ten days, but a fire occurred afterwards during its occupancy, it was held that the policy did not become void. In *Omaha Fire Ins. Co. v. Dierks*, 43 Neb. 473, 61 N. W. 740, where an insured incumbered his personal property by a

chattel mortgage, after such property had been insured and contrary to the provisions of the insurance policy, he was allowed to recover the value of the insured property destroyed, by showing that, at the time of its destruction, it was free from the lien of the mortgage; citing *State Ins. Co. v. Schreck*, 27 Neb. 527, 43 N. W. 340, 20 Am. St. 696, 6 L. R. A. 524. In *Hinckley v. Germania Fire Ins. Co.*, 140 Mass. 38, 1 N. E. 737, 54 Am. Rep. 445, it was held that the temporary illegal use without a license of property insured, if uncontemplated at the time of taking the policy, would not of itself, and as a matter of law, render the policy void during the whole of the rest of the time it was to run. It would simply vitiate the policy during the time of the illegal use and, when the illegal use stopped, the policy would revive; the court saying:

"It is not the necessary meaning of the word 'void,' as used in policies of insurance, that it shall under all circumstances imply an absolute and permanent avoidance of a policy which had once begun to run; but the meaning of the word is sufficiently satisfied by reading it as void or inoperative for the time being";

citing Phillips on Insurance, § 975, where it is said:

"After it [*i. e.*, the policy] has begun, so that the premium is become due, it surely is but equitable that a temporary noncompliance should have effect only during its continuance. To carry it further is to inflict a penalty on the assured, and decree a gratuity to the insurer, who is thus permitted to retain the whole premium when he has merited but part of it";

citing many cases to sustain the rule.

It is useless to cite a greater number of cases. But we are satisfied, from an examination of all the cases cited by both appellant and respondents, and of all that we have examined on our own motion, that the statement of Elliott on Insurance above quoted, to the effect that the weight of authority seems to support the view that a violation of a condition that works a forfeiture of the policy, merely suspends

the insurance during the violation, is a correct announcement. In *Traders Ins. Co. v. Catlin, supra,* the court, to show the fallacy of the rule contended for, says:

"That a recovery on a policy on a building in the center of the burned district in Chicago's great fire should be defeated because a gallon of gasoline was therein kept and used a year before that time does not commend itself as a reasonable rule."

To still further show the fallacy, by distorting the proposition, yet still leaving it within the bounds of possibility or even probability, under the rule contended for, if the holder of a life insurance policy in the state of Washington, which prohibits by its terms the departure of the applicant from the territory of the United States, should inadvertently or otherwise straggle across the boundary line into British Columbia and, after detecting the mistake which he had made geographically, should return to the state of Washington, live here for twenty, thirty, or forty years, paying his annual premiums which are accepted and appropriated by the company, upon his death, occurring by an accidental discharge of a fire-arm or by being cremated in a burning theater—causes which could not possibly have been affected by the breach of his contract—his beneficiary would be deprived of the benefit of his life insurance policy by reason of such violation. The thought is too abhorrent to be maintained for a moment, and yet in principle it is exactly the same.

But, in addition to all these questions which we have discussed, we think probably there is no case which would hold that the appellant in this case could successfully urge this defense, for, according to the findings of the court, there has been no violation of any contract whatever by the respondents. Conceding that there was a warranty, there was no warranty that the assured should at all times maintain the automatic sprinkler system, but the representation was only that the assured should "use due diligence" in maintaining the sprinkler system; and, as we have seen, under the

findings of the court, due diligence was used in that regard. So that it seems absolutely at variance with any theory of the law to prohibit the insured from recovering under this policy.

The judgment of the lower court will therefore be affirmed.

CROW, PARKER, FULLERTON, and MOUNT, JJ., concur.

MORRIS, J. (dissenting)—I dissent for the reasons given in the opinion on the original hearing in Department One, to which I still adhere. The majority opinion as herein expressed wipes out the law of warranty in this state, a principle that is as old and well founded as any other principle in insurance law. There is no conflict between the *Hart* case referred to in the majority opinion and the rule announced in the opinion on the original hearing herein. The *Hart* case deals with a representation which the court refuses to extend into a warranty either by interpretation or implication, and holds that, in order to be read as a warranty, the provision must appear to be expressly so intended by the insured and insurer, and in case of ambiguity or doubt, the construction should be that of a representation rather than a warranty. The same rules are announced and adhered to in the original opinion, and there was no expressed or implied intention to depart from them. It is said in the *Hart* case that, notwithstanding the policy contains hard and unjust conditions, the insurance company has the right to make such a contract, and when so made, it is the duty of the courts to enforce them regardless of their harshness, when it appears such a contract was actually made. The original opinion goes no further. Finding an express warranty in the policy based upon a reduction of the premium, it gave effect to it, and in so doing followed the law both in principle and upon authority.